RICHARD JONES, Respondent, v. J. F. BARNARD, Receiver, etc., Appellant.

Kansas City Court of Appeals, November 18, 1895.

1. **Appellate and Trial Practice**: COSTS: SECOND SUIT: JUDICIAL DISCRETION. Where a second action is waged between the same parties for the same cause, the presumption is that the second action is vexatious, and, unless the presumption is overcome, the court will order the second proceeding stayed until the costs in the first are paid, but such action is within the sound discretion of the court, and can only be reviewed where there is a clear abuse of the court's discretion; and all the evidence must be preserved before an appellate court can review such action.

2. **Negligence**: CROSSING: TRAVELER'S DUTY: CONCURRENT FAULT. Persons entering upon railroad crossings are bound to the exercise of ordinary care and prudence; and, failing in this, if injured by the concurrent fault of themselves and the railroad operator, they can not recover.

3. ————: ORDINARY PRUDENCE: JURY QUESTION: DIVERSITY OF DECISION. What an ordinarily prudent man would do under given circumstances must usually be left to a jury, and negligence can not be conclusively established by a state of facts upon which fair minded men may well differ; and, as juries have and will differ as to what a reasonably prudent man would do under such circumstances, so judges differ as to whether or not contributory negligence has been conclusively established.

4. ————: RAILROAD CROSSING: TRAVELER'S DUTY: OBSTRUCTION. The law imperatively requires a traveler crossing a railroad to look carefully in both directions at a convenient distance from the crossing, and the duty is not performed by attempting to look only from a point at which the view is obstructed, but continues until the crossing is reached. *McNown v. Railroad*, 55 Mo. App. 585, *distinguished* from this case.

*Appeal from the Livingston Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED.

*Theodore Sheldon* for appellant.

(1) The contributory negligence charged in the answer was established. *Kelsay v. Railroad,* 30 S. W. Rep. 339; *Hayden v. Railroad,* 38 S.W. Rep. 74; *Baker v. Railroad,* 122 Mo. —. (2) This suit should be stayed until payment of costs in the former action. Merrifield on Costs, 354; Parsons on Costs, 5; *State v. Howe,* 64 Ind. 18; *Kits v. Wilson,* 89 Ind. 95; *Clemans v. Buffenbarger,* 106 Ind. 16; *Corrothers v. Corrothers,* 107 Ind. 530; *Sellers v. Meyers,* 34 N. E. Rep. 497; *Sooy v. McKean,* 4 Halst. 86; *Cooper v. Sheppard,* 4 Halst. 96; *Swing v. Inhabitants,* 5 Halst. 58; *Re anonymous,* 1 Harrison, 415; *Sears v. Jackson,* 3 Stockton, 45; *Gerrety v. Railroad,* 9 Phila. Rep. 153; *Zimmerman v. Keubler,* 9 Pac. Co. Rep. 128; *Brown v. Brown,* 81 Ala. 508; *Sears v. Box,* 8 S. Rep. 792; *Robinson v. Merchants, etc., Co.,* 14 Atl. Rep. 860; *Smith v. Allen,* 79 Me. 536; *Field v. Amidon,* 48 Wis. 66; *Gerrish v. Brewster,* 6 Minn. 53; *Edwards v. Railroad,* 22 How. Pr. 444; *Bates v. Dickenson,* 12 N. Y. S. —; *Gardner v. Oswego Ass'n,* 17 N. Y. S. 394; *Barton v. Spies,* 73 N. Y. 133; *Noonan v. Railroad,* 22 N.Y. S. 860; *Weston v. Withers,* 2 Term Rep. 511; *Haigh v. Paris,* 16 L. J. Exch. 37; *McCabe v. Bank,* 14 L. R. App. Cas. 413; *Hurst v. Jones,* 4 Dallas, 353; *Henderson v. Griffin,* 5 Peters, 151; *Buckles v. Railroad,* 47 Fed. Rep. 424; Daniels, Ch. Pr. 797.

*Alexander & Richardson, Thos. A. Gaines,* and *John E. Waite* for respondent.

(1) The question of contributory negligence was properly one for the jury, and not for the court, to decide. A person on a highway, approaching a railroad crossing, is only required to use ordinary care, which does not mean that every possible precaution

shall be adopted, but only that care and circumspection which should be expected of a man of ordinary prudence, under the circumstances. *Petty v. Railroad,* 88 Mo. 306; *McNown v. Railroad,* 55 Mo. App. 585; *Kenney v. Railroad,* 105 Mo. 271; *Jennings v. Railroad,* 112 Mo. 269; *Dahlstrom v. Railroad,* 108 Mo. 525; *Lynch v. Railroad,* 112 Mo. 420; *Crumpley v. Railroad,* 111 Mo. 152; *Sullivan v. Railroad,* — Mo. 214; *Weller v. Railroad,* 120 Mo. 635; *Lloyd v. Railroad,* 29 S. W. Rep. 153, and same case in 31 S. W. Rep. 110; *Turner v. Railroad,* 30 S.W. Rep. 253. (2) Revised Statutes, 1889, section 2608, requiring signals at railroad crossings, and declaring that a failure to make them shall render the railroad company liable to any person injured at the crossing, warrants a finding for the injured person, notwithstanding his negligence, where it appears that obedience to the statute would have prevented the injury. *Lloyd v. Railroad,* 29 S. W. Rep. 153, and numerous cases cited. This case was affirmed by the court *in banc* May 21, 1895. (See 31 S. W. Rep. 110.) (3) The court did not err in modifying the order made at the May term, requiring plaintiff to pay the costs of former suit, before permitting him to proceed with the trial of the case at bar as a poor person. If the court had refused to modify the order, we could not have complained, as the whole matter was in the discretion of the court. In the whole list of authorities cited by the counsel for appellant, we don't find one where an appellate court interfered with the action of a trial court in granting or refusing to make such an order.

GILL, J.—This is an action to recover damages for injuries received by plaintiff at a railroad crossing in Daviess county, September 26, 1893. The defense relied on was contributory negligence. The circum-

Jones v. Barnard.

stances attending the collision will be stated later on.
At the trial in the circuit court plaintiff had a verdict
and judgment for $1,600, and defendant appealed.

I.    We are first asked to review the court's action
in declining to stay proceedings in the cause until the
plaintiff should pay the costs of a prior suit for the
same cause of action, and which he had dismissed
without going to trial.    It seems that plaintiff, in
November, 1893, begun a suit in the Daviess county
circuit court, the petition in that action being the same
as here, except as to the amount of damages asked.
On the defendant's application this first suit was, in
January, 1894, removed into the federal circuit court
at St. Joseph.    In March following such removal, plain-
tiff dismissed this first action, and costs to the amount
of $92 were adjudged against him.    He at once insti-
tuted the present suit in the Daviess circuit court,
which was taken by change of venue to Livingston
county.    After the issues were made by answer and
reply the defendant filed his motion, reciting the com-
mencement of the former action, its removal to the
United States circuit court, the trouble and expense
which defendant had undergone in preparing for trial,
the plaintiff's voluntary nonsuit, and that the costs
adjudged against him had not been paid, and prayed
the court to stay further proceedings in the last suit
until such costs were paid.    The court at first sustained
this motion, but subsequently, on a showing made by
the plaintiff, revoked its action and permitted the plain-
tiff to proceed.

An examination of the numerous authorities which
are cited in defendant's brief fully sustains the position
that the court may require the plaintiff in a second suit
for the same cause of action to pay the costs in the
former case, which has been dismissed, before being
allowed to further harass the defendant.    This power

was formerly exercised in ejectment suits only, but in later years it has been extended to every form of action, whether disposed of in the first place by voluntary dismissal, involuntary nonsuit, or by judgment on demurrer. The reasons for this interference by the courts in a matter which seems really outside the case in hand, are based on the conceded power of courts of justice to control their own proceedings, so as to prevent oppression between its suitors. As well said by the learned judge in *Buckles v. Railroad*, 47 Fed Rep. 424: "While the courts should be open and free to the citizen for the enforcement of rights and the redress of grievances, he himself should be held to do justice, and not litigate and relitigate, experiment and re-experiment with the chances of a favorable verdict, without paying to the ministerial officers of the court their just fees and to the defendant his costs in that behalf laid out and expended." But, borrowing again from the same court, it is well to remember that this rather extraordinary power to stay the litigant in the prosecution of his action is in the nature of an *"equitable discretion inherent in every court, and it should be exercised cautiously, ex aequo et bono,* employing or declining the power as the right and justice of the particular case may seem to require." To the same effect, see *Sellers v. Myers*, 7 Ind. App. Ct. Rep. 148; *Felt v. Amidon*, 48 Wis. 66.

We quote from the syllabus in the case first above cited, and which correctly reflects the opinion: "Where a second action is waged between the same parties for the same cause, the presumption is that the second action is vexatious, and, unless the presumption is overcome, the court, in such case, will order the proceedings stayed until the costs in the first suit are paid. The burden of removing such presumption rests upon the plaintiff, and the presumption fades away before

countervailing evidence. Whether such proceeding will be stayed or not is within the sound discretion of the court, which can not be reviewed, except where there is clearly an abuse of discretion."

So, then, in the case at bar we come to this: The trial court, after hearing both sides and considering all the circumstances attending the dismissal of the first action and its reinstitution, as well as the alleged inability of the plaintiff to pay the costs adjudged against him in the first suit, has concluded that it would not be the proper exercise of a wise, equitable discretion to make the prepayment of these costs a condition precedent to the prosecution of plaintiff's second action. We are not prepared to say that this was an abuse of a sound discretion. We are not, indeed, furnished, in the abstract filed in this appeal, with the evidence tending to excuse the plaintiff's failure to pay the costs in the former suit. In appellant's statement of the case it is stated, in a general way; that plaintiff's affidavit sought to excuse the delinquency "on account of his financial condition; that he (plaintiff) was unable to pay the costs," etc. It is clear, however, that the trial judge had before him further and other proof not submitted to us. How, then, are we to say that the court below abused its discretion in this matter, when we are not furnished with the testimony nor fully advised of all the circumstances in the light of which such discretion was exercised? We must presume right acting on the part of the trial court. Especially is this the rule with reference to those things which come within the range of its judicial discretion. Before we can interfere with its decision in such matter there must be shown a manifest abuse of that discretion. This point, then, will be held against the defendant.

II.   We come now to a more important inquiry. Was the plaintiff himself, in the matter of crossing the

railroad tracks, guilty of such negligence as will pre-
clude his recovery? The injuries to plaintiff occurred
September 20, 1893, at what is known as Best Crossing,
between Pattonsburg and McFall stations, on defend-
ant's road. The railroad at that point runs from a
southeast to a northwest direction, and the public road
crosses it from north to south, at an acute angle of
about forty-five degrees. The track of the railroad
west of the crossing passes through a cut, leaving an
embankment on both sides, but immediately at the
crossing, the wagon road and railroad occupy about
the same elevation. In excavating the bed for the rail-
road, surplus earth was left on the east side, and this,
with the grass, weeds and bushes which had grown up
along between the roads, obstructed the view of one
traveling along the highway, to such an extent that a
clear view of the railroad west could not be obtained
by one coming from the north, until the traveler
arrived at a point about twenty-five or thirty feet north
of the crossing. At this point, however, if the traveler
should look to the northwest, he would have an unob-
structed view of the railroad track for six hundred
feet or more. There is a heavy up-grade going from
Pattonsburg on the east to McFall on the west; so
much so, that freight trains were occasionally divided
and taken over in sections. This collision occurred
while a locomotive and its tender were backing down
from McFall to Pattonsburg, for the purpose of getting
the second section of a divided train. It was a bright
day and at about 2 o'clock in the afternoon, the plain-
tiff was driving an ordinary two horse wagon south
along the line of the public road above mentioned. As
he approached the crossing (along the line of the wagon
road from a culvert two hundred and fifty yards north
of the crossing), plaintiff says he drove slowly and
listened attentively, at different points, for a coming

train, but heard none. He drove upon the right of way and about twenty-five or thirty feet from the railroad tracks, but kept his vision to the southeast, expecting, he says, that all danger, if any, was to be apprehended from that direction, since it was about the hour a westward bound train was due. He did not look to the west at all, until he had gone upon the track and then his attention was attracted by some noise, when he turned his eyes in that direction and discovered the engine and tender within a few feet of him. In the collision, the wagon was badly damaged, the plaintiff's hip was broken, but neither the horses, nor his little boy, riding with the plaintiff, were injured.

Plaintiff's evidence tended further to prove that defendant's servants in charge of the locomotive and tender, neglected to give the statutory signals, when approaching the crossing, and that they were permitting the engine to drop down the grade from McFall to Pattonsburg, without the use of steam, and at the rate of thirty to forty miles per hour.

There are a great variety of cases, particularly in this state, involving this duty of the traveler, when about crossing railroad tracks. The general rule to be applied is well settled and easily declared. It is, of course, well understood, that even though the train may be negligently and recklessly operated—though the employees may be guilty of the grossest negligence and may entirely ignore those precautions prescribed by statute—yet these will not excuse persons who pass these crossings, from the exercise of a due and proper care for their own safety. They have no right, blindly and heedlessly, to go forward and put themselves in the way of danger, all on the assumption that the train men will carefully observe and perform their duty in protecting the traveling public. Persons about entering upon these dangerous crossings are bound to the

exercise of ordinary care and prudence. If they fail in this and are run over and injured through and by the combined fault of themselves and railroad operator, there can be no recovery.

The difficulty in these cases comes from the determination of what is the correct measure by which the acts of men are to be judged—what would an ordinarily prudent man have done, under the same circumstances. Usually this must be left to the jury; for as to what an ordinarily careful and prudent person would have done under certain conditions is generally a question of fact about which reasonable men may fairly arrive at different conclusions. Negligence can not be conclusively established by a state of facts upon which fair minded men may well differ. *McNown v. Railroad*, 55 Mo. App., at page 591. But as juries have differed, and will continue to differ, as to what a reasonably prudent man would or would not do under certain circumstances, so will judges differ as to whether or not the alleged contributory negligence has been conclusively established; and hence the diversity of opinion in the courts of the country as to questions of this nature.

But, however varied may seemingly be the decisions of the courts, we are bound by constitutional mandate to follow the last announcement of the supreme court of Missouri. In two cases lately passed upon by it, we are furnished with all the law necessary to a disposition of this appeal. See *Kelsay v. Railroad Co.*, 30 S. W. Rep. 339; and *Hayden v. Railroad*, 124 Mo. 566. The facts in both are much the same as here. In the *Kelsay* case, the plaintiff drove onto the railroad crossing at a point where a view of the track was obstructed, until she arrived at twenty-five feet from the rails. While passing over this space, however, if she had looked both ways, she could and would have seen the approaching train (which was

being run toward the crossing, without ringing the bell or sounding the whistle), and in time to have stopped her conveyance and avoided the collision; and that she did not do so, but went upon the track and was injured by the passing train, was held conclusive proof of contributory negligence, which destroyed plaintiff's right to recover. Referring to the rule requiring the traveler, when approaching the crossing, to use all reasonable precautions to ascertain the presence of trains and avoid injury therefrom, the court there says: "This rule imperatively requires him to look carefully, *in both directions*, at a convenient distance from the crossing, before venturing upon it, if by looking a train could be seen. The duty will not be performed by attempting to look only from a point at which the view is obstructed. The duty is a continuing one until the crossing is reached. If there is a point between the obstruction and the track, which gives opportunity to see, it is the duty of the traveler to look. He can not close his eyes and thereby relieve himself of the consequences of his own neglect. * * * The question then is, whether there was a point after these obstructions were passed, and before the crossing was reached, at which she could have seen the train and avoided the collision. The evidence is conclusive that the embankment was not nearer the track than twenty-five feet on the north. There were no weeds or other obstructions between this embankment and the railroad toward the southeast. The railroad was substantially straight. It is therefore established by these undisputed facts that plaintiff had, for a space of twenty-five feet, an unobstructed view of the track for some considerable distance, and a space in which she could safely have waited" etc.

The circumstances of this plaintiff were much the same as they were with Mrs. Kelsay. Admitting that

a view of the railroad was obstructed for a considerable distance north of the crossing, so that plaintiff could not see the track when coming from that direction, the evidence, however, conclusively shows that when he got within a distance, which the witnesses variously fix from twenty-five to forty feet, he had an uninterrupted view of the railroad to the west (the direction from which the locomotive came) of more than six hundred feet; and that the plaintiff did not within that space look to the west, but kept his eyes to the east, until he was right upon the crossing, is equally clear; or if he did cast his vision in that direction, then it is quite sure he saw the approaching engine and tender and negligently paid no heed to it. In either event, his right to recover was lost; for, as said in the *Kelsay* case (quoting from Beach on Negligence): "If a traveler, by looking, could have seen an approaching train in time to escape, it will be presumed, in case he is injured by a collision, either that he did not look, or if he did look, that he did not heed what he saw."

The *Hayden* case, 124 Mo. 566, quite as strongly denies this plaintiff any right to recover. There the plaintiff's husband was killed at a crossing and the plaintiff was nonsuited, because the deceased failed to look both ways for a train while passing over a space of fifteen to thirty feet just before entering upon the track with his wagon and team. There, as here, were obstructions that prevented a view of the track until approaching within a very short distance. "The crucial question is", says the opinion: "Could the deceased, after he had passed the obstruction and when he was in a place of safety, fifteen, twenty, twenty-five or thirty feet from the crossing, as the case may have been, with nothing to distract his attention from his situation with reference thereto, have seen

the approaching train, had he looked to his right therefor?" The court, after referring to the evidence which conclusively proved that if the deceased had looked within this distance where observation was obstructed, he would have seen the danger of driving upon the track, concludes that, notwithstanding the negligence of the railroad company, "yet the deceased, having lost his life through his own negligence, in failing to discharge the duty imposed upon him by law, in his situation, the plaintiff can not recover for his death."

These late decisions, based as they are on facts so very similar to the case at bar, settle this controversy in favor of the defendant. The *McNown* case, 55 Mo. App. 585, is different in some respects from the one at bar. That decision assumes that McNown did look after passing from under cover of the grain house, or other small structure, which prevented his view of the track, and that he saw the coming train just in time to pull his team to one side, before entering upon the track. He was, however, unable to get one of his horses entirely out of the way and he was struck and killed. It was a question in that case whether or not McNown did look both ways for a train, as quickly as he might have done, acting as an ordinarily prudent man would, under similar circumstances. We thought there was evidence in that case tending to prove that he did this, and hence we held that the issues ought to have been submitted to the trial jury. We thought the decision in the *McNown* case covered by that of the supreme court in *Kenney v. Railroad*, 105 Mo. 270, and like authorities. And it is expressly announced in the *Kelsay* case, *supra*, that there was no intention to overrule or question the authoritative force of the *Kenney* case.

Judgment reversed. All concur.