MARIE WEIGMAN, Appellant, v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY.

In Banc, November 29, 1909.

1. **CONTRIBUTORY NEGLIGENCE: Demurrer.** Contributory negligence on the part of the injured party will defeat a recovery; and where the evidence unquestionably makes out a case for plaintiff, the court should submit the case to the jury, unless the injured party was guilty of such contributory negligence as would defeat recovery.

2. ———: ———: **Crossing Railroad Track: Looking and Listening: Obstruction.** The law imperatively requires a traveler, when approaching a railroad street crossing, to look carefully, at a convenient distance from the crossing, before venturing upon it, if by looking an approaching train could

be seen. But it does not require him to look if there were such obstructions that, had he looked, he could not have seen the approaching train. So that where the driver's view of the main track, upon which was the train that struck him, was obstructed for a distance of from seven hundred and fifty to one thousand feet from him by an engine, train and idle cars on a track only eight feet from the main track, and his view was so obstructed while he traveled seventy-five feet towards the crossing, and he could not while he traveled that distance until he was struck and killed have seen the train, he should not be charged with such contributory negligence as bars his widow's right to recover, although there was no evidence that he looked for the train.

*Held*, by **GRAVES**, J., dissenting, that if the traveler's vision was obstructed he must be all the more cautious to exercise his sense of hearing, and when he could not see, had he stopped and listened he could have heard, but did not, a demurrer to his evidence should be sustained.

3. ———: ———: ———: **Presumption.** Where the evidence is silent on the question as to whether the traveler, before crossing the track, looked and listened for the train, the presumption is that he did both, where there was such obstruction that had he looked he could not have seen, and had he listened it would have been difficult if not impossible to have heard.

4. ———: ———: **Listening: No Whistle or Bell.** The plaintiff makes out a *prima facie* case on the subject of listening where the evidence shows no bell was rung or whistle sounded as the train approached the crossing, and then the burden of non-liability shifts to defendant.

Appeal from Jefferson Circuit Court.—*Hon. Jos. J. Williams*, Judge.

REVERSED AND REMANDED.

*H. B. Irwin* and *Byrns & Bean* for appellant.

(1) The burden of proving contributory negligence on the part of plaintiff's husband rested on defendant. Plaintiff's husband, in the absence of evidence on her behalf to the contrary, was presumed to have been in the exercise of ordinary care. The instruction given by the court erroneously required

plaintiff to prove affirmatively that her husband was in the exercise of ordinary care. Stotler v. Railroad, 200 Mo. 146; Hucksold v. Railroad, 90 Mo. 548; Green v. Railroad, 192 Mo. 143; Weller v. Railroad, 164 Mo. 198. Plaintiff's husband had the right to presume that defendant would obey the ordinances of the city and to govern his actions accordingly. Failure to obey the ordinances was negligence *per se*. Mockowik v. Railroad, 180 Mo. 168; Hutchinson v. Railroad, 161 Mo. 254. Plaintiff's case should have been submitted to the jury. Cook v. Railroad, 19 Mo. App. 332; Johnson v. Railroad, 77 Mo. 546; Moberly v. Railroad, 17 Mo. App. 518; Donahue v. Railroad, 91 Mo. 363; Petty v. Railroad, 88 Mo. 306; Kennayde v. Railroad, 45 Mo. 255; Russell v. Railroad, 70 Mo. App. 88; Baker v. Railroad, 147 Mo. 140; 2 Thompson's Commentaries on the Law of Negligence (2 Ed.), secs. 1645, 1654, 1656.

*Martin L. Clardy* and *James F. Green* for respondent.

(1) A clear case of contributory negligence on part of Weigman was disclosed by the testimony, and plaintiff is therefore precluded from any recovery. Laun v. Railroad, 216 Mo. 563; Sanguinette v. Railroad, 196 Mo. 466; Green v. Railroad, 192 Mo. 131; Sims v. Railroad, 116 Mo. App. 572; Hayden v. Railroad, 124 Mo. 566; Kelsey v. Railroad, 129 Mo. 374; Hook v. Railroad, 162 Mo. 569; Turner v. Railroad, 74 Mo. 607; Hickman v. Railroad, 47 Mo. App. 74; Lane v. Railroad, 132 Mo. 16; Payne v. Railroad, 136 Mo. 581; Geyer v. Railroad, 174 Mo. 344; Butts v. Railroad, 98 Mo. 272; Schmidt v. Railroad, 191 Mo. 228. (2) There being no evidence that deceased looked or listened for approaching trains, no presumption can be indulged that he did. Jones v. Railroad, 63 Mo. App. 509; Hook v. Railroad, 162 Mo. 569; Beach on Contributory Negligence (2 Ed.), sec. 182; Huggart v. Railroad, 134 Mo. 679; Lynn v. Railroad, 79 Mo.

App. 478; Kries v. Railroad, 148 Mo. 330. (3) Where the evidence is such that it is the duty of the trial judge to set a verdict aside as not supported by sufficient evidence, it is his duty and prerogative to direct a verdict. Hite v. Railroad, 130 Mo. 132; Asphalt Co. v. Transit Co., 102 Mo. App. 476; Reichenbach v. Ellerbee, 115 Mo. 588; Jackson v. Hardin, 83 Mo. 175; Fuchs v. St. Louis, 167 Mo. 631; Warner v. Modern Woodmen, 119 Mo. App. 230.

## IN DIVISION ONE.

WOODSON, J.—The plaintiff is the widow of William C. Weigman, who was killed by one of defendant's passenger trains, through the alleged negligence of its employees, while he was crossing the track upon a public crossing in the city of DeSoto, Missouri. She brought this suit against defendant to recover the sum of $5,000 for his said negligent killing. A trial was had, and after the introduction of all the testimony offered by both parties, at request of the defendant, the court gave a peremptory instruction, telling the jury to find for it. In obedience to that instruction, the jury returned a verdict for defendant, judgment accordingly, and plaintiff appealed the cause to this court.

The petition charged, in substance, that plaintiff was the wife of William C. Weigman, that said Weigman was struck by one of defendant's trains and killed on June 2, 1905, shortly after six o'clock a. m. of that day, while he was lawfully traveling on a public traveled street in the city of DeSoto (a city of the third class), leading from West Main street to East Main street at a point in defendant's yards where defendant maintained nine parallel tracks, which crossed said street at grade. The negligent acts of defendant complained of as having caused the death of William C. Weigman, are, first, that the agents and servants

of defendant in charge of its engine and train wholly failed to ring the bell thereon at a distance of eighty rods from the crossing and to keep the same ringing until said locomotive had crossed said traveled public street; second, wholly failed to sound a steam whistle at a distance of eighty rods from said crossing and to sound said whistle at intervals until said locomotive crossed said street; third, failure of defendant to comply with ordinance No. 514, sections 1 and 2, requiring defendant to place and keep a watchman on said crossing between the hours of half past five o'clock a. m., and ten o'clock p. m., each day, said watchman to give notice to travelers of approaching trains; fourth, running its train at a high rate of speed, viz., twenty-five miles per hour, in violation of section 350 of the ordinances of the city of DeSoto, which ordinance is as follows: "No locomotive engineer, railway employee, or other person shall cause any locomotive engine, railroad passenger car, or freight car, to be driven, propelled or run upon or along any track within the city of DeSoto at a greater speed than five miles per hour." Fifth, running its said train in violation of section 356 of the ordinances of the city of DeSoto, which requires the bell to be rung 20 rods from the crossing of a public street and kept ringing while the train is running through said city and which ordinance is as follows: "The bell of each locomotive engine shall be rung at a distance of at least twenty rods from the place where the railroad shall cross any street or thoroughfare of this city, and shall be rung continuously while said engine is passing through said city, or if running in the yard in this city, the bell shall be rung continuously while said engine is running." Sixth, that defendant negligently placed a locomotive engine, attached to a train of passenger cars, on its west side track immediately south of and extending up to said crossing, thereby obstructing the view of the said William C. Weigman from said crossing of all trains com-

ing on the main track from the south, and the escaping steam from said engine, so negligently placed and maintained on the side track, rendered it difficult for plaintiff's husband to see or hear trains approaching said crossing from the south.

The facts of the case are substantially as follows:

Plaintiff was the wife of William C. Weigman, on June 2, 1905, the date when he was struck and killed. He was killed while attempting to cross defendant's tracks, on a public crossing, in the city of DeSoto, Missouri. Main street runs north and south, practically through the center of the city. In the center of that street there are located nine parallel railroad tracks, and on each side of the tracks there is a space of — — feet left—that on the west side is called West Main street, and that on the east side is called East Main street. There are but two streets crossing Main; one of these crossed in front of the Commercial Hotel, and is known as the ''Commercial Crossing.'' This was the principal crossing within the city limits. This crossing, leading from West Main street to East Main, was about twenty-five or thirty feet in width, and crossed all nine of those tracks at grade. The most westerly track was a switch track, and the next immediately east thereof was the main track, on which the train was running which struck plaintiff's husband. The distance between those two tracks was eight feet. On this switch track there was standing a passenger train with the pilot of the engine thereof extending several feet beyond the south line of the crossing and over into the crossing the same number of feet. The engine was fired up with a full head of steam on, ready to pull out for the north, and was blowing off and emitting large volumes of smoke and steam and making loud noises. The train attached to this engine was known as the ''DeSoto Accommodation,'' which consisted of an engine, tender and several passenger coaches; and immediately behind or south of this accommodation, and

on the same track, were standing a number of other passenger coaches, and also a number of freight box cars, none of which were in use at the time. This train and these idle coaches and cars were about fourteen feet in height, and extended back south from said crossing for a distance of 750 to 1,000 feet to the "old freight depot." Plaintiff's evidence tended to show that when a train from the south on the main line reached the south end of the "old freight depot" it would be hidden from the view of a person by the "DeSoto Accommodation," and by the coaches and cars standing south thereof, until it reached the "Commercial Crossing,"—that is, hidden from a person occupying the position Weigman was occupying during all the time he was on West Main street, which will be described presently.

Weigman was sixty years of age, and possessed all of his faculties—could see and hear well.

The evidence also tended to show that all of the ordinances pleaded were duly enacted by the city of DeSoto, and were in force and operation at the time of the injury complained of; that there was no watchman stationed at the crossing to warn people of approaching trains, at the time of the injury, as required by said ordinance, nor had there been for months prior thereto, all of which was well known to Weigman; and that the whistle was not sounded nor was the bell rung for eighty rods, or for any other distance, before reaching said crossing, as required by ordinance of the city and the statute of the State.

Just immediately before Weigman was killed, he was at the store of Mr. Welch, on the west side of West Main street, and about seventy-five feet south of the south line of the Commercial Crossing, where he had been delivering some vegetables. He was driving a team of two horses, hitched to an ordinary spring wagon. The team were headed south and were standing in front of Welch's store. After transacting his business

223 Sup—45

with Welch, he got into his wagon, facing south, and sat down on the seat thereof, and started to the east side of East Main street, for the purpose of delivering other vegetables. He drove off in a walk or slow trot, turning his team to the east and north, forming something of a semi-circle, until he reached the north half of the crossing, not far from the west rail of the west switch track, upon which the "DeSoto Accommodation" was standing, his horses shying during the meantime from the seething, hissing noise emanating from the engine attached to that train.

The plaintiff's evidence also shows that just before or about the time Weigman got in his wagon and turned to the east and north, the regular passenger train of defendant, due to arrive at that time, came in sight, at the south end of the "old freight depot," going north at a rate of speed variously estimated by the witnesses of both parties from twelve to thirty miles an hour, and that the bell was not rung or the whistle sounded; but there was no evidence the deceased saw this train at that time, nor is it clear that he could have seen it from the place where he was standing. When Weigman reached the north side of the crossing he drove east along the north side thereof until the heads and fore feet of his horses reached the west rail of the main line, when he was seen to jerk or pull back upon the lines, thereby attempting to pull his horses back from the track, but he was too late, for at that very instant the regular passenger train from the south struck his horses and threw him into the air; and in falling to the ground he received injuries from which he died within three or four hours.

The evidence for defendant tended to show that the deceased was perfectly familiar with the tracks and the running of trains over them at the time of and prior to the date of his injury; that the whistle was sounded for DeSoto, when the train was south of the "old freight depot," and that the bell was rung, as re-

quired by the ordinances; that the train could have been seen by Weigman while he was driving from Welch's store to the place of the injury. Witness Welch testified that he was at his place of business and that he saw the train which struck Weigman over the top of the baggage car of the "DeSoto Accommodation" "just two seconds" before it struck deceased. Witness Williams, the night clerk at the Commercial Hotel, was standing in front of the hotel at the time of the injury and saw the accident. He testified that he heard the whistle of the engine when the train was back "at the Toby switch" (some distance south) and saw it coming all the way down until it struck Weigman; and that during the time the train ran from the "old freight depot" to the place of the injury, Weigman was driving from Welch's store to the crossing, where he was struck.

Witness Bland was standing in front of Knorpp's store, about sixty feet south of the crossing, and on the west side of West Main street. He testified he first saw the train when it was about fifty-five feet south of the crossing, and that he watched it until it struck Weigman. All of the witnesses testified that deceased did not stop from the time he left Welch's store until the instant he jerked his team back and attempted to get them back off of the track, but he was too late. Both Welch and Williams immediately before the collision occurred, and about the same time, hollowed at deceased, warning him of the approaching train, but he did not hear them, nor did the engineer or fireman who were seated in the cab of the engine attached to the "DeSoto Accommodation" train.

I have stated fully the substance of, and somewhat in detail, all of the evidence introduced in this case bearing upon the question of the propriety or impropriety of the action of the trial court in giving the peremptory instruction in favor of the defendant.

The following is a copy of the instruction given by the court, at the request of defendant, at the close of all of the testimony in the case, viz:

"The court instructs the jury that there being no evidence in the case that plaintiff's husband either looked or listened for approaching trains before attempting to go upon defendant's track and there being no evidence that he stopped and listened for an approaching train, your finding and verdict must be for the defendant."

To the giving of which plaintiff objected and excepted at the time.

The following is plaintiff's assignment of errors:

First. The court erred in striking out the testimony of W. A. Welch, a witness for the plaintiff, who testified that the train that struck plaintiff's husband was at the time running at a rate of twenty-five miles per hour.

Second. The trial court erred in giving to the jury at the close of the whole case, a peremptory instruction to find for the defendant.

Third. The court erred in refusing to admit legal and competent evidence offered by the plaintiff.

Fourth. The court erred in refusing to sustain plaintiff's motion for a new trial.

## OPINION.

I. It is not contended by counsel for respondent that the evidence contained in this record does not tend to show Weigman was struck and killed in consequence of its negligence, which, of course, was sufficient to carry the case to the jury, without it is true, as they contend, that the evidence also conclusively shows he was guilty of negligence which directly contributed to his injury; and for that reason they insist that the trial court properly instructed the jury to find for respondent.

By reading the peremptory instruction given on behalf of respondent, it will be seen that it was asked by counsel and given by the court, upon the theory that the evidence conclusively showed Weigman was guilty of such contributory negligence as would prevent a recovery by appellant in this case, and not because the evidence did not otherwise make out a prima-facie case for the jury. So, under that view of the case, it will be unnecessary, and we will not discuss the evidence and the various deductions and reasonable inferences which might and should be drawn therefrom, if we were passing upon the question as to whether or not the appellant had made out a prima-facie case.

But in passing we will state generally, that the evidence unquestionably made out a case in her favor, and the court should have submitted it to the jury under proper instructions, without deceased was guilty of such contributory negligence as would prevent a recovery.

It would be a work of supererogation to cite authorities in support of the proposition that contributory negligence on the part of the deceased would defeat a recovery by his widow in this case. So we will come directly to the question, did the evidence in this case show such contributory negligence on the part of Weigman as warranted the trial court in giving the peremptory instruction complained of?

Counsel for respondent insist that the court rightfully gave that instruction, for the reason that "there being no evidence that the deceased looked or listened for approaching trains, no presumption can be indulged that he did."

In support of that insistence, counsel cite the following cases: Jones v. Barnard, 63 Mo. App. 509; Hook v. Railroad, 162 Mo. 569; Huggart v. Railroad, 134 Mo. 679; Lien v. Railroad, 79 Mo. App. 475; Kreis v. Railroad, 148 Mo. 330.

In the case of Jones v. Barnard, supra, the plaintiff drove upon a railroad crossing at a point where a view of the track was obstructed until she arrived at a point twenty-five feet from the rails. She drove that twenty-five feet on to the track, without looking, and was struck and injured by an approaching train. In holding she was guilty of contributory negligence and could not recover upon that account, the Court of Appeals, p. 510, used this language:

"Referring to the rule requiring the traveler, when approaching the crossing, to use all reasonable precautions to ascertain the presence of trains and avoid injury therefrom, the court there says: 'This rule imperatively requires him to look carefully, in both directions, at a convenient distance from the crossing, before venturing upon it, if by looking a train could be seen. The duty will not be performed by attempting to look only from a point at which the view is obstructed. The duty is a continuing one until the crossing is reached. If there is a point between the obstruction and the track, which gives opportunity to see, it is the duty of the traveler to look. He cannot close his eyes and thereby relieve himself of the consequences of his own neglect. . . . The question then is, whether there was a point after these obstructions were passed, and before the crossing was reached, at which she could have seen the train and avoided the collision. The evidence is conclusive that the embankment was not nearer the track than twenty-five feet on the north. There were no weeds or other obstructions between this embankment and the railroad toward the southeast. The railroad was substantially straight. It is, therefore, established by these undisputed facts that plaintiff had, for a space of twenty-five feet, an unobstructed view of the track for some considerable distance, and a space in which she could safely have waited,' etc.

"The circumstances of this plaintiff were much

the same as they were with Mrs. Kelsay. Admitting that a view of the railroad was obstructed for a considerable distance north of the crossing, so that plaintiff could not see the track when coming from that direction, the evidence, however, conclusively shows that when he got within a distance, which the witnesses variously fix from twenty-five to forty feet, he had an uninterrupted view of the railroad to the west (the direction from which the locomotive came) of more than six hundred feet; and that the plaintiff did not within that space look to the west, but kept his eyes to the east, until he was right upon the crossing, is equally clear; or if he did cast his vision in that direction, then it is quite sure he saw the approaching engine and tender and negligently paid no heed to it. In either event, his right to recover was lost; for, as said in the Kelsay case (quoting from Beach on Negligence): 'If a traveler, by looking, could have seen an approaching train in time to escape, it will be presumed, in case he is injured by a collision, either that he did not look, or if he did look, that he did not heed what he saw.'

"The Hayden case, 124 Mo. 566, quite as strongly denies this plaintiff any right to recover. There the plaintiff's husband was killed at a crossing and the plaintiff was nonsuited, because the deceased failed to look both ways for a train while passing over a space of fifteen to thirty feet just before entering upon the track with his wagon and team. There, as here, were obstructions that prevented a view of the track until approaching within a very short distance. 'The crucial question is,' says the opinion, 'Could the deceased, after he had passed the obstruction and when he was in a place of safety, fifteen, twenty, twenty-five or thirty feet from the crossing, as the case may have been, with nothing to distract his attention from his situation with reference thereto, have seen the approaching train, had he looked to his right therefor?' The court, after referring to the evidence which con-

clusively proved that if the deceased had looked within this distance where observation was obstructed, he would have seen the danger of driving upon the track, concludes that, notwithstanding the negligence of the railroad company, 'yet the deceased, having lost his life through his own negligence, in failing to discharge the duty imposed upon him by law, in his situation, the plaintiff cannot recover for his death.' "

In the case of Hook v. Railroad, supra, the plaintiff drove upon the track where he had a clear view of it from two to three hundred feet, and was injured. This court held he could not recover on account of his contributory negligence, and in discussing that question the court, on page 580, said: "From the very nature of the crossing and its surroundings, as detailed by all the witnesses called by both plaintiff and defendant, and the plaintiff himself, it of necessity could not be true that plaintiff, in the full possession of his sense of sight and hearing, could not have seen or heard the train that was approaching the crossing, on defendant's tracks, until his team had reached the crossing and stepped upon it, had he stopped, looked and listened for the approach of a train, at any point on the public highway upon which he was traveling, between the north rail of the track and twenty-five or thirty feet north of the crossing or without stopping his team had he looked in the direction from which the train was coming. When to look is to see, the mere utterance that one did look and could not see, will be disregarded as testimony by the court (Kelsay v. Railroad, 129 Mo. 362; Hayden v. Railroad, 124 Mo. 566); and no additional value is to be given to the utterance because of the fact that a jury, under the direction of the trial court, has predicated a finding thereon. As the law does not permit a witness to blind his eyes to the sight of an approaching train in full view of a crossing he is to pass, neither will the eye of the law become blinded to the true situation of the case merely because

of the absurd statement of a witness or witnesses, 'I looked and could not see,' or the jury's indorsement of it by a finding predicated thereon, when to look was to see.''

In Lien v. Railroad, supra, the empty cars obstructed the plaintiff's view of the track until he got within thirty or thirty-five feet of it, but there was no obstruction to break his view while driving that thirty feet. Without looking, he drove that distance onto the track and was injured. The Court of Appeals in holding he could not recover used the following language:

''And when getting to a point twenty-five feet from the railroad tracks he had an uninterrupted view more than a quarter of a mile in the same direction. In either event there would have been and was ample time and opportunity to avoid a collision and escape injury. This being the case, it is clear under the repeated decisions of this and the Supreme Court, that plaintiff cannot recover, even conceding that defendant's train was negligently operated. [Jones v. Barnard, 63 Mo. App. 501, and cases cited.] In that case we had under consideration facts similar to those here, and what is there said applies with equal force to the matter now in hand. It is useless to encumber opinions or reports with further repetition of the rules of law governing such cases.

''It is true that plaintiff testified that he did look from time to time in the direction of the coming train. But whether this was before or after he had passed the obstructions is not made clear. However this was, such evidence goes for naught as against the uncontroverted physical facts that there was an open unobstructed view of six hundred feet of the track when he arrived within thirty or thirty-five feet of the crossing and of a quarter of a mile thereof exposed to view when he got within twenty-five feet of the point of danger. As said in the Kelsay case (120 Mo. l. c. 374), one of two things is true: 'Either the plaintiff did not

look with that care and common prudence required of him, or he did not look at all, until too late to avoid the collision.' In this case it was the imperative duty of the plaintiff when he passed the obstructions to look and listen; he had no right to venture blindly upon the track without first using his senses of hearing and sight. There is no pretense here that the plaintiff was deficient in either faculty. The rule then applies, that one who is struck by a moving train which was plainly visible from the point he occupied when it became his duty to look and listen, must be conclusively presumed to have disregarded that rule of law and of common prudence, and to have gone negligently into an obvious danger. [Kelsay Case, supra, and Lane v. Railroad, 132 Mo. 4-27.]''

In Huggart v. Railroad, supra, the plaintiff could have seen the track all the way from thirty to forty feet before reaching it, but, without looking, he drove upon it, and was struck and injured by an approaching train. This court held he could not recover in this language:

It is an uncontradicted and conceded fact that when he reached a point from thirty to forty feet from the track, a point where he was free from all danger of collision with trains upon the road, he could have seen up the track to the west a distance of six hundred and possibly a thousand feet. As a physical fact that train was then in sight. One of two conclusions is inevitable. He either did not look and heedlessly rode upon the track and was killed, or he looked and saw the approaching train and attempted to cross ahead of it. In either case he was guilty of such contributory negligence as bars a recovery by his widow.

"Porter Huggart is dead. We have no explanation of his conduct in attempting to cross the track in the face of a rapidly approaching train, but in view of the physical impossibility of his failing to see the train had he looked up to the west as it was his clear duty

to have done, while yet out of danger, the law denominates his conduct in going upon the track and attempting to cross as contributory negligence. There can be no presumption of ordinary care in the face of such facts to the contrary and without explanation. [Hayden v. Railroad, 124 Mo. 566; Kelsay v. Railroad, 129 Mo. 362; Lane v. Railroad, 132 Mo. 4.]

"The learned counsel for plaintiff, while conceding the force of these cases as precedents, yet attempts to draw a distinction between those cases and the one at bar because he thinks plaintiff's husband was not in a place of safety when thirty or thirty-five feet from the track when he first saw the train; that he could not stop his team; that he was a stranger and driving a borrowed team. Neither of these circumstances, nor all of them combined, change the complexion of the deceased's conduct. There is not a particle of evidence that the team was unmanageable or that the deceased was ignorant of their characteristics.

"The fact that he had never crossed at this point prior to this occasion instead of lessening his care should have incited him to greater vigilance. That a man of mature years, in possession of his mental and physical faculties, driving a team to an ordinary farm wagon, up grade, at an ordinary gait, and seeing a train approaching while yet thirty or forty feet from a railroad crossing could not safely stop without going upon the track, is contrary to reason and common experience."

Also in the case of Kreis v. Railroad, supra, the track was in plain view of plaintiff, and without warning she suddenly stepped upon the track and was injured by an approaching train. This court held she was guilty of contributory negligence, and that her husband could not recover on that account.

From even a casual reading of the record in the case at bar, it will be seen that the facts hereof are

totally unlike the facts in any and all of the cases just considered.

In this case, plaintiff's evidence tended to show that Weigman's view of the main line or track, upon which was the train that struck him, was obstructed from him for a distance of from 750 to 1,000 feet by an engine and string of cars, about fourteen feet high; that he was seated in a spring wagon, with his head not more than seven or eight feet above the ground, which would make it absolutely impossible for him to have seen the approaching train which struck him; especially since the evidence shows that his horses were headed south, and in turning he drove east and north toward the train and cars which obstructed his view, which placed him much nearer to them than were Welch and Williams, who saw the train a second or two just prior to the time it struck Weigman. The nearer he approached those cars the less able he would be to see a train on the other side on the main track over or between them, for the reason that the degree of the angle of his vision would be increased in proportion to the distance traveled toward them; and when reached, he then could only see straight up the vertical walls of the cars, and parallel with the west line of the cars, north and south, thereby rendering it physically impossible for him to see over or between the cars. For this reason it cannot be conclusively said Weigman saw the approaching train on the main line, or could have seen it, if he had been looking, simply because Welch and Williams standing on the other side of the street saw it, for the reason that he was much nearer the cars than they were, and for that reason his vision was in that proportion obstructed. They had the advantage of being able to see between the cars, if not over them, but neither of them saw the approaching train until it was within some fifty or sixty feet of the crossing.

This case differs materially in another respect from the cases cited and relied upon by counsel for respondent, and that is this. In this case the distance between the west track, the one upon which these obstructing cars were standing, and the main track, the one the approaching train was on, was only eight feet; and it is common knowledge that the cars project about two feet on each side over the rails, which would leave a space of only about four feet between two trains while standing or passing each other thereon. So it is thus seen that while Weigman was passing over the west track on the crossing in front of the "DeSoto Accommodation" train, his vision of the approaching train on the main line was obstructed by the engine and cars of that train until he had driven eastwardly a sufficient distance to enable the line of his vision to pass in front of and along the east side of the engine so as to enable him to see the approaching train upon that track.

But in this case before it was physically possible for deceased to reach that position, the evidence shows that the heads and forefeet of his horses, which must have been ten or twelve feet in front of where he was sitting on the seat of his wagon, were about the west rail of the main track, which was only eight feet from the west track, when the train thereon shot by at a high rate of speed, striking the horses and throwing him out of the wagon and killing him. If this evidence of appellant is to be believed, then the deceased from the time he left Welch's store until he was killed could not have seen the main line and the approaching train thereon at any time before he was struck and killed. In that regard this case differs materially from all of the cases relied upon by counsel for respondent, for in each of those cases the plaintiff could have seen the track and the approaching train thereon had he been looking. Here Weigman could not see the tracks

south of the crossing at all before the heads of his horses reached the main track.

But independent of these facts, counsel for respondent insists that there was no evidence that deceased looked or listened for approaching trains, and that there should be no presumption that he did either.

This is not a fair statement of the facts of the case, and, consequently, not a proper declaration of the law applicable thereto.

The truth of the matter is, there is no evidence tending to show he did not look and listen for approaching trains, and in the absence of such evidence the presumption is deceased did look, but failed to see the one which struck him, on account of the obstructions before mentioned, and failed to hear it, because the noises produced by the engine attached to the "DeSoto Accommodation" made it difficult, if not impossible, to be heard. [Buesching v. Gaslight Co., 73 Mo. 231; Twohey v. Fruin, 96 Mo. 109; Gannon v. Gas Co., 145 Mo. 516.]

These cases announce the rule, that in the absence of evidence to the contrary, the law presumes that the plaintiff in an action to recover damages for injuries sustained by the hands of another, was at the time of the injury in the exercise of ordinary care.

The case of Donohue v. Railroad, 91 Mo. 357, is particularly applicable to this case. On page 363, Norton, J., in speaking for the court, said:

"It is settled that ordinary care and prudence require a person, who is about to cross a railroad track, at a street or public crossing, to look and listen for a train, when by looking he could see, or by listening he could hear, an approaching train, and the omission to do either would be such negligence on his part as to prevent a recovery for an injury, provided his perilous condition was not, and could not, by the exercise of ordinary diligence, have been discovered in time to avoid injuring him. It is not made to appear in this

case that the deceased could have seen the train which killed him till he got upon the west track, and the mere fact of his not looking south till he got on said track, but was looking north at a switch engine on the switch track he was about to cross and did cross, cannot be imputed to him as negligence, for the reason that if he had looked south he could not have seen the train, his view in that direction being cut off by a row of houses. Nor can it be said that he was guilty of contributory negligence in not stopping to listen, it not appearing from the evidence that he could have heard the train had he stopped, but, on the contrary, from the fact sworn to by one of the witnesses, who was standing near the east track forty feet north of Dorcas street, without anything to obstruct the sound, that the train made so little noise that he did not hear it until it was crossing Dorcas street. If the demurrer admits the fact sworn to by this witness, then, under the rule hereinbefore referred to, we must infer that Donohue, had he stopped and listened, could not have heard it, especially so in view of another fact that a row of buildings intervened between him and the train as an obstruction both to sight and sound.

"Neither seeing nor hearing the train, nor the sound of a bell, for none was rung, the deceased had a right to presume that he could pursue his course without danger. What is said in the case of Kennayde v. Railroad, 45 Mo. 255, may be appropriately applied here. It is there said: 'The citizen who on a public highway approaches a railway track, and can neither see nor hear any indication of a moving train, is not chargeable with negligence for assuming that there is no car sufficiently near to make the crossing dangerous. [Ernst v. Railroad, 35 N. Y. 9.] He has a right to assume that in handling their cars, the railroad company will act with appropriate care; that the usual signals of approach will be seasonably given, and that the managers of the train will be attentive and vigi-

lant. In Newson v. Railroad, 29 N. Y. 390, the rule is stated thus: ''The law will never hold it imprudent in any one to act upon the presumption, that another in his conduct will act in accordance with the rights and duties of both.'' In the case of Gordon v. Railroad, 40 Barb. 550, it is said: ''A defendant cannot impute a want of vigilance to one injured by his act—as negligence—if that very want of vigilance were the consequence of an omission of duty on the part of the defendant.'' ' After quoting the above authorities approvingly the court then adds: 'In the case at bar the defendant not only misled the deceased by omitting all the usual and customary precautions to notify persons of the pending danger, but it acted in open and flagrant violation of the statute made for the protection of the public. The consequence of the omission was to put the victim off his guard, to disarm his vigilance, and lull him into a false sense of security. When the laws are broken and defied, and homicides are recklessly committed, it is no part of the business of courts to hunt up excuses, or seize upon technicalities for the purpose of shielding the wrong-doers.' The case of Petty v. Railroad, 88 Mo. 306, is to the same effect.

''Nor can we say as a matter of law, that Donohue, after getting on the west track, and seeing the train thirty steps south of him, when the front feet of his horse were on the east track, was guilty of negligence in whipping his horse to make the crossing. The peril was then upon him, and presuming, as he might, that the train was being run, not in violation of, but according to, the mandates of the ordinance, at six miles an hour, he, as a prudent man, might well have concluded that to extricate himself from the peril it was safer for him to urge his horse across than to undertake to turn him around and incur the hazard of bringing his vehicle in contact with the train. At all events the question as to whether the course adopted by him to free himself from the peril surrounding him was such

as a man of ordinary prudence might or would have adopted was a question for the jury.''

It is also insisted by counsel for respondent that had deceased listened he could have heard the approaching train. The evidence upon that question is conflicting. Appellant's testimony tended to show the bell was not rung nor the whistle sounded while the train approached the crossing; while some of defendant's witnesses testified that they heard the whistle at the Toby crossing, but other of its witnesses never heard the bell or the whistle. Of course, if the bell was not rung nor the whistle sounded, then the deceased not only did not hear them, but he could not have heard them.

This court has held several times that where the evidence shows an injury at a public crossing by a train colliding with a pedestrian, or with a person driving across the track, when the bell was not rung or the whistle sounded, a prima-facie case was made, and the burden of proving non-liability was then shifted to the defendant. [Crumpley v. Railroad, 111 Mo. 152; Green v. Railroad, 192 Mo. 131.]

There was no evidence introduced showing that the train which struck Weigman made any other noise or sound than that produced by the bell and whistle (if the former was rung and the latter sounded), which could have warned him of its approach, without the court should take judicial notice of the fact that trains, running at the rate of speed the evidence showed this one was running, do make noises and produce sounds while moving. But in this case we do not feel called upon to decide that question, for the reason that there was no evidence whatever introduced which tended to show any one heard any such noise or sound produced which could have warned him of its approach. The reason for the absence of such evidence is, we presume, such noises, if made, were rendered inaudible to those

223 Sup—46

in the vicinity of the accident by the hissing sounds produced by the blowing and escaping steam from the engine attached to the "DeSoto Accommodation" train, standing on the "Commercial Crossing;" and especially would that be true with those who were in the immediate vicinity of that engine. As to them the noise from the engine would be increased or decreased to each in proportion to the distance each stood from the engine, for the reason that sound increases and decreases in proportion to the rapidity and scope of the sound waves produced by the escaping steam. That is a law of physics of which the court may take judicial notice; and in addition thereto it is borne out by the testimony of Welch and Williams, who testified that they hollowed to Weigman, warning him of his danger, but he apparently did not hear them, nor did the engineer or fireman hear them, who were seated in the cab of the engine, which was several feet nearer them than was Weigman.

When we view this case in the light of the foregoing authorities, we have no hesitancy in saying that the conduct of Weigman in driving upon the track in front of the approaching train, under the facts and circumstances before stated, was not such contributory negligence as would justify the court in declaring as a matter of law that his widow could not recover. And, as was wisely said by Judge COOLEY in Railroad v. Van Steinburg, 17 Mich. 120:

"When the judge decides that a want of due care is not shown, he necessarily fixes in his own mind the standard of ordinary prudence, and, measuring the plaintiff's conduct by that, turns him out of court upon his opinion of what a reasonably prudent man ought to have done under the circumstances. He thus makes his own opinion of what would be generally regarded as prudence, a definite rule in law. It is quite possible that if the same question of prudence were submitted to a jury selected from the different occupations of

society, and perhaps better competent to judge of the common opinion, he might find them differing with him as to the ordinary standard of proper care.

". "While there is any uncertainty, it remains a matter of fact for the consideration of the jury. The difficulty in these cases of negligent injuries is, that it very seldom happens that injuries are repeated under the same circumstances; and, therefore, no common standard of conduct by prudent men becomes fixed or known. Negligence cannot be conclusively established by a statement of facts upon which fair-minded men may well differ." [See also Gratiot v. Railroad, 116 Mo. 450; Elliott v. Railroad, 105 Mo. App. 523; Crumpley v. Railroad, 111 Mo. 152; Petty v. Railroad, 88 Mo. 306.]

II. We are also of the opinion that Welch was a competent witness to testify as to what rate of speed the train which struck Weigman was running at the time of the collision.

We are, therefore, of the opinion that the court should have submitted to the jury under proper instructions the question as to whether or not Weigman was guilty of contributory negligence in driving upon the crossing in front of the train, under the facts as disclosed by this record, and that the action of the trial court in giving the peremptory instruction to find for respondent was error.

The judgment should be reversed and the cause remanded. It is so ordered. All concur, except *Graves, J.,* who dissents in separate opinion.

## IN BANC.

This cause was transferred to Court in Banc on the dissenting opinion of Judge GRAVES, and after due consideration the divisional opinion of WOODSON, J., was adopted as the opinion of the Court in Banc.

All concur except *Graves, J.,* who dissents in a separate opinion.

## DISSENTING OPINION.

GRAVES, J.—I am of opinion that the trial court was correct in directing a verdict in this case. It is true that the plaintiff's evidence shows negligence upon the part of the defendant, but it likewise as conclusively shows contributory negligence upon the part of the deceased. The railway tracks, some eight or nine in number, run north and south through the city of DeSoto. On the west of these tracks is a strip of ground used as a street called West Main street, and on the east of them is another strip of ground called East Main street, so that references to West and East Main street should be understood as parts of the same street, one part to the west, and the other to the east of the railway tracks. This Main Street runs north and south, as do the railway tracks. The point of accident was a crossing from the west portion of Main Street to the east portion thereof. From the west the first railway track encountered was a switch track and next thereto was the main line. Deceased was struck by the north-bound passenger train on this main line. He had been in the West Main street just south of this crossing some eighty feet, with his face to the south, the direction from which the train came. Seated in his spring wagon he turned toward the east, then north, and then east upon this crossing. Two of his witnesses saw the smoke from the in-coming passenger engine as it passed by the baggage car of the train which was standing still. These witnesses were on the ground and deceased seated upon a seat in his spring wagon. He knew that it was about train time. What these witnesses saw, the plaintiff could have seen had he looked. So that upon the question of looking there is evidence tending to show that he did not look, for to look was to see evidences of the approaching train, if not the train itself.

But passing this point the trouble with the plaintiff's case lies in a further and undisputed fact. Concede that the view of the deceased was absolutely obstructed, then what was his duty in crossing a railroad track, when a train was to be expected every moment. Every witness says that he never stopped his team from the time he left Welch's store 70 or 80 feet south of this crossing until his horses were upon the main line of the railway tracks, at which point they were struck. It is the duty of one approaching a railroad track to look and listen for his own safety. If his vision is interfered with by obstructions, he must be all the more cautious about exercising the sense of hearing. If there were things which tended to impede the hearing, this is but a further reason for greater caution. However, this man without even slackening the speed of his team, recklessly drove into a place of danger.

I have no doubt under the disclosed facts in this case, had deceased stopped his wagon and listened, this cause would not be here. The more his sense of sight was interfered with the greater became his duty to fully exercise his sense of hearing. His failure to stop and listen for this train was such contributory negligence as to preclude recovery in this case, and the judgment *nisi* should be affirmed.