MARY LAGARCE, Respondent, v. MISSOURI PACIFIC RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals. Argued and Submitted March 4, 1914. Opinion Filed April 7, 1914.

1. **NEGLIGENCE: Contributory Negligence: Question of Law or Fact.** It is only when the testimony is very clear and practi- cally uncontradicted that the court should declare that the plain- tiff in a negligence case was guilty of contributory negligence as a matter of law.

2. **APPELLATE PRACTICE: Conclusiveness of verdict.** A ver- dict supported by substantial evidence will not be disturbed on appeal.

3. **RAILROADS: Action for Death in Crossing Collision: Con- tributory Negligence: Question for Jury.** In an action for the wrongful death of a driver of a wagon who was run down by a train at a crossing of a private roadway, held that the ques- tion of whether decedent was guilty of contributory negligence was for the jury.

4. ————: ————: ————: **Instructions.** The driver of a wagon on a roadway which crossed defendant railroad's tracks had a view of from seven hundred to nine hundred feet at a point about forty feet from the tracks, and from that point the train which struck his wagon was not visible. The ordinances of the city wherein the accident occurred required the bell on the locomotive to be continuously rung and forbade the opera- tion of trains at a greater speed than twenty miles an hour. There was testimony showing that the bell on the locomotive which struck decedent's wagon was not rung, and that the

train was operated at a speed in excess of twenty miles an hour. Defendant requested an instruction, that if decedent's death was the result of an unavoidable accident, due to his inadvertent act in driving on the track immediately in front of a moving train, the verdict should be for defendant. *Held*, that, in view of the fact that decedent looked and saw that no train was approaching within the distance of at least seven hundred feet, and knowing that no train running at a lawful rate of speed could reach him before he got across the track, he had a right to go forward, the characterization by the refused instruction of his act in doing so as an act of inadvertence and the collision as an unavoidable accident were incorrect, and justified its refusal. *Held, further*, that the instruction was properly refused because it omitted all reference to defendant's violation of the ordinances.

5. ————: ————: **Contributory Negligence: Stop, Look and Listen Rule.** The general rule merely requires one to look and listen before going upon a railroad track, and he is not required to stop, except when he is so situated that he can neither see nor hear; so that where, from a point forty feet from a crossing, a person could see that there was no train within from seven hundred to nine hundred feet, and a train running within the maximum rate prescribed by ordinance could not possibly strike him before he crossed the track, he had a right to presume that he could cross in safety, and was not required to stop again before attempting to cross.

Appeal from St. Louis City Circuit Court.—*Hon. Charles Claflin Allen,* Judge.

AFFIRMED.

*James F. Green* for appellant.

(1) A clear case of contributory negligence on part of plaintiff's husband was established by the evidence, and the court should have so declared. Farris v. Railroad, 167 Mo. App. 398; Kelsay v. Railroad, 129 Mo. 365; Dyrcz v. Railroad, 238 Mo. 33; Burge v. Railroad, 244 Mo. 76; Laun v. Railroad, 216 Mo. 563; Stottler v. Railroad, 204 Mo. 619; Green v. Railroad, 192 Mo. 131; Schmidt v. Railroad, 191 Mo. 215; Sanguinette v. Railroad, 196 Mo. 466; Hook v. Railroad, 162 Mo. 569; Lien v. Railroad, 79 Mo. App. 475; Jones

v. Barnard, 63 Mo. App. 501; Drake v. Railroad, 61 Mo. App. 562; Hayden v. Railroad, 124 Mo. 566; Ries v. Railroad, 179 Mo. 1; Lane v. Railroad, 132 Mo. 4; Huggart v. Railroad, 134 Mo. 673; Stepp v. Railroad, 85 Mo. 229; Butts v. Railroad, 98 Mo. 272; Haffey v. Railroad, 154 Mo. App. 493; Sims v. Railroad, 116 Mo. App. 572; Gumm v. Railroad, 141 Mo. App. 313; Houston v. Railroad, 95 U. S. 702. (2) The court erred in refusing to give defendant's instruction No. 9. Henry v. Railroad, 113 Mo. 535; Maxey v. Railroad, 95 Mo. App. 309; Feary v. Railroad, 162 Mo. 99; Zeis v. Railroad, 205 Mo. 638; Lynch v. Railroad, 102 Mo. App. 641; Harrod v. Pack Co., 125 Mo. App. 361. (3) The court erred in refusing to give defendant's instruction number 3 as asked, and in modifying said instruction. Hook v. Railroad, 162 Mo. 584; Henze v. Railroad, 71 Mo. 640; Smith v. Railroad, 52 Mo. App. 40; Hixon v. Railroad, 80 Mo. 335; Stepp v. Railroad, 85 Mo. 235; Kelly v. Railroad, 88 Mo. 548; Hornstein v. Railroad, 195 Mo. 451; Mayes v. Railroad, 71 Mo. App. 140; Frank v. Railroad, 99 Mo. App. 333.

*A. R. & Howard Taylor* for respondent.

(1) The plaintiff's evidence showed that there was gross negligence on the part of the defendant in running its engine and train at a speed of from thirty to fifty miles an hour, in violation of the ordinance of the city of St. Louis limiting its speed to twenty miles an hour. This was negligence as a matter of law. Gratiot v. Railroad, 116 Mo. 463; Campbell v. Railroad, 121 Mo. App. 411. (2) When the deceased had stopped his team at a place thirty to forty feet from the crossing and looked and listened for an approaching train that might endanger his passage over the crossing and neither saw nor heard the train because it was too far away to endanger his passage if running at the speed prescribed by ordinance, he

had the right to presume that any train coming would not be run in excess of the lawful rate of speed and sound the bell. Kennayde v. Railroad, 45 Mo. 255; Donohue v. Railroad, 91 Mo. 363; O'Connor v. Railroad, 94 Mo. 150; Kellny v. Railroad, 101 Mo. 78; Kenney v. Railroad, 105 Mo. 270; Weller v. Railroad, 120 Mo. 652; Weller v. Railroad, 164 Mo. 180; Riska v. Railroad, 180 Mo. 190; Weigman v. Railroad, 223 Mo. 719; Moon v. Transit Co., 237 Mo. 434.

STATEMENT.—This is an action brought by the wife to recover damages for the death of her husband occasioned, as it is alleged, by the negligence of defendant, the negligence charged being excessive speed— over twenty miles an hour—and also failure of the employees of defendant to cause the bell. on the engine to be constantly sounded while the engine and train were running in the city of St. Louis, both in violation of the ordinance of the city.

The answer, after a general denial, avers that the injuries to and death of plaintiff's husband were the result of his own negligence and carelessness, which directly contributed to cause his death, in this: That he drove on defendant's track, on which his team was struck, so close to cars standing on the adjoining track or tracks that his approach to the track could not be discovered by the person in charge of defendant's engine which struck the team the decedent was driving, without ascertaining before he drove on the track, as it was his duty to have done, whether a train was approaching thereto, and by not stopping his team before he drove on the track to ascertain that fact, and in failing to observe and heed the signals given by the train and the noise and smoke made thereby, and stop his team until the train had passed, and in failing to heed the warnings of persons on or near the crossing, given him of the approach of the train, and in failing to avoid the train after he had discovered the danger of being

struck thereby, and in otherwise failing to exercise such care as an ordinarily prudent person would have done under similar circumstances.

The reply was a general denial.

The *locus in quo* was at the crossing of a private roadway over the tracks of appellant, this private roadway, which we will call the dirt road, running north and south and leading from the works of the Missouri Fire Brick & Clay Company north to Manchester avenue. While not a dedicated street of the city, it was in constant use by the public, particularly by the employees of the Missouri Fire Brick & Clay Company, for whom plaintiff's husband, owning his own team, was engaged in hauling, and was in the habit of using this road to reach the Brick Company's works from Manchester avenue. This dirt road crosses four of defendant's tracks. These four tracks, two spur tracks or sidings, and two main tracks, are south of Manchester avenue and run parallel to each other and to Manchester avenue and run east and west. The spur tracks are immediately south of Manchester avenue. The next track south of these spurs or sidings is the main track, called the westbound track; next south of that is the other main track, called the eastbound track; south of that and of the right of way is the property of the Brick Company. Lagarce was struck and killed at the crossing of the dirt road over the westbound track. Thirteen feet, two and one-half inches from the center of the eastbound track, which is the most southern track, and to the north, is the center of the westbound track. Fourteen feet, one and one-half inches north from the center of this is the center of the south spur track or siding, and twelve feet, two and one-half inches north of the center of this is the center of the north spur track. Ten feet and ten inches north of the center of this latter is the south line of Manchester avenue, along which are the double tracks of the United Railways Company. The

westbound main track of defendant is thirty-nine feet and six inches south of the south line of Manchester avenue, at the point where the dirt road leaves that avenue and runs south. We gather these figures from the testimony, aided by the plat which was in evidence and is before us. Referring to these measurements and to the testimony, the distance between the north rail of the westbound track of defendant and the south rail of the spur track next north of that is nine feet one and one-half inches clear between these two tracks. There were box cars standing on the spur tracks, on which of them is not very clear; apparently west of the crossing of the dirt road. It was in evidence that these box cars extend from two to two and one-half feet beyond the rail. Hence there was a space of about six feet, seven and one-half inches clear along the side of this car between it and the north rail of the westbound track. The length of the horses of decedent and the distance back to the wagon where he sat while driving was eight feet, so that when the line of vision alongside of these cars was open for decedent to see a car coming from the east, his horses would be about one foot north of the track, one and a half feet, say counsel for respondent. Knox avenue was one hundred and sixty-five feet west of this dirt road, and Sulphur avenue nine hundred feet east of it. It may be added that the train, the engine of which struck Lagarce, was the Kirkwood Accommodation coming from the east going west and, as stated, on the westbound track, the track immediately north of the eastbound track. The train consisted of an engine and tender, combination coach and one or more passenger coaches. Its crew was made up of an engineer, fireman, brakeman and conductor. Just as the horses of Lagarce had gotten well onto the westbound track, the engine struck them, killed Lagarce, killed one of the horses instantly and fatally injured the other, and was not brought to a stop until it had run several hundred

feet west of the place of the accident. It further appears that just before this westbound train came along and passed this crossing, an eastbound train had gone over this same crossing along the eastbound track, the two trains having met at about Sulphur avenue.

Going into the evidence in detail, the summary of it made by the learned counsel for appellant is very concise and with few changes we follow that summary.

Miss Jennie Katherine Lang testified that she saw John Lagarce killed by a westbound passenger train on the Missouri Pacific tracks on April 9, 1906; that when the accident occurred she was standing on a platform on the south side of the street car tracks at Knox avenue, waiting for a street car; that when she saw Lagarce he was driving his wagon on Manchester avenue, going east; that as he turned across Manchester avenue into this dirt road, he stopped for awhile, stopped to listen, as witness supposed, for a few minutes, and looked east and west, turning his head in those directions, and then started over the track; that his horses were moving at a walk, going about two or three miles an hour; that the train that struck Lagarce was running about fifty miles an hour; never heard any signals given by the train; did not remember seeing or hearing any train approaching from the east at the time Lagarce stopped and looked; that after Lagarce had stopped at the entrance to the driveway he did not stop again but drove along continuously until he was struck. On cross-examination, Miss Lang, indicating on the plat the place where she was standing, as north of defendant's tracks, and west of the dirt road crossing, repeated that when she first saw Lagarce he was driving east on Manchester avenue; that he stopped north of the first railroad track, which would be north of the north spur track, and then drove on but halted "a little bit" before he got to the main track, that is, the westbound track upon which he was struck; that some cars were standing on the first two

spur tracks. Asked if there was not a train, which she saw when she was first down there at the platform, going east, she answered that she could not remember that train at all; did not remember that train going east at all; remembered the one going west, which was the one she saw after it had struck Lagarce. Witness further testified that she had been standing on this platform about ten or fifteen minutes before the accident, waiting for a street car; had no recollection, while she stood there, of hearing the noise of either one of these trains. That, said the witness, was "all a blank" to her. Asked if, after the collision occurred between the train and Lagarce, she recalled looking over to the point of collision and seeing both of the trains, one going east and one going west, she answered that she did not remember anything of any train except the one that struck Lagarce. Asked what there was on these two tracks, the northernmost tracks, or the spur tracks, between where she was and this driveway, she said that there were no cars there; that there was a sort of culvert or trestle and she repeated that she had never noticed the noise of either of the trains, either the one coming from the east or the one going west, until the westbound one struck Lagarce; had not heard this westbound train at all until it passed where she was standing at Knox avenue; then she heard the train coming from the east, the one which struck Lagarce, and she watched that, but she repeated, under close cross-questioning, that she had no remembrance whatever of seeing or hearing any eastbound train, the one going toward St. Louis; may have heard it at the time but could not recall it; did not remember hearing any bell or whistle; if the train going west whistled or rang a bell, she did not hear it nor had she heard a whistle or bell from a train going east; had no recollection of how far the train was from Lagarce when he drove his team onto the track; all she remembered of that train was seeing it strike him, and had not seen that

train approach at all. Asked if what had attracted her attention to the fact of Lagarce going on the crossing was the fact of the collision, she answered that she was watching Lagarce; that he had attracted her attention in some way going along and she just followed the wagon, that is, just watched the wagon and was paying no attention to the fact that there were trains on the track until just about the time the train struck him, when she saw a little puff of smoke and then did not hear anything else; saw that just as the train hit him; before that had heard no noise of a train at all and had heard no whistle nor bell nor anything. She repeated, "They didn't blow any whistle or anything; all that attracted me was the smoke;" had never seen either of the trains, although one of them had passed within twenty feet of her, until the train struck Lagarce.

Another witness for plaintiff, Hazel Rubelt, testified that she was on Knox avenue at the time Lagarce was killed; saw him drive his team east on Manchester avenue; when he got to the driveway or dirt road and turned in, he slowed up and came to almost a standstill and looked in both directions. She saw the engine of the westbound train strike Lagarce and throw him and one of the horses in the air; that after the train struck Lagarce it ran about the length of a city block before it stopped; that after Lagarce had turned into the roadway and looked in both directions, he drove right straight along until he was struck. On cross-examination this witness testified that she had stopped between the street car tracks and the railroad tracks on Knox avenue to see if a train was coming; that she did not see or hear either the train going east or the one going west; that after Lagarce had "slacked up" and started to drive on again, he continued to drive straight ahead until he was struck; she was looking in the direction in which he was driving but did not

see the train coming until it struck the horses. This witness was ten years old at the time of the accident.

George Thomas, a witness for plaintiff, testified that at the time of the accident, he was superintendent of the Missouri Fire Brick Company; that the roadway over which Lagarce was driving was the only inlet to the factory of the Brick Company at that time from Manchester avenue, and all the hauling in and out of the factory was done over that roadway; that when he first saw the train that struck Lagarce, it was within several feet of the horses; that he had not heard the bell of the engine ringing before the accident but heard the whistle blow just as the engine struck the horses. On cross-examination he testified that he was in the office of the Brick Company at the time of the accident and was walking toward the door when the whistle attracted his attention; was not looking for a train; that so many trains passed the office during the day he paid no attention to them; that the train which struck Lagarce was within several feet of the horses at the time he heard the whistle and looked out; that at the time he saw the train, the engineer could not have avoided striking the horses as the train was going too fast; that when the horses saw the train they shied but he did not know what position they were in at the time they were struck.

Dennis O'Connell, another witness for plaintiff and in the employ of the Missouri Fire Brick Company as laborer, testified that he was standing on the south side of the railroad tracks when Lagarce was struck; he saw Lagarce coming east on Manchester avenue; that he turned into the street car tracks at Knox avenue, then drove slowly along to the east until he got to the crossing of this dirt road; that when he turned in at the crossing he stopped and looked east and west; that as he came down this dirt road Lagarce was driving about two miles an hour; that the train that struck Lagarce was running about forty miles an hour.

Witness did not hear the engine bell or the whistle before the train struck Lagarce's wagon; that after it struck Lagarce it ran on for about four and a half blocks; that looking from the roadway crossing eastward, the direction from which this train was coming, a man on a wagon could have seen a train approaching for six or seven hundred feet; that there were four cars standing on one of the spur tracks near the scene of the accident. On cross-examination he stated that he was just west of the Fire Brick Company's office at the time of the accident; that the eastbound train came in ten minutes after the train which struck Lagarce had passed; that Lagarce did not stop for this eastbound train but stopped and looked across and there was no train coming at all; that Lagarce had stopped before he crossed any of the railroad tracks; that he did not hear a Mr. Tracy or anybody halloo at Lagarce and did not hear the noise of either the east or westbound train.

Another witness for plaintiff, Dave Morgan, testified that he saw Lagarce driving a wagon on Manchester avenue before he had turned into this roadway or dirt road; that his face was turned toward the east but from where witness was he could not tell where Lagarce was looking; that at the place where he saw Lagarce, a man sitting on a wagon and looking east could have seen an approaching engine for six or seven hundred feet; that he did not hear or see a train coming until he heard the crash when Lagarce was struck; that the train which struck Lagarce was running forty or fifty miles an hour. On cross-examination this witness stated that he was two hundred and thirty or three hundred feet away from the place where the accident occurred; that the morning was bright and clear; that he had not seen the train which passed just before the accident, and that all he saw was the train after it struck Lagarce when it had passed witness.

Plaintiff also introduced in evidence the sections of the ordinance pleaded. Referring to pages 794 and 795, McQuillin's Annotated Municipal Code of St. Louis (Ed. 1900), sec. 1748, article 5, of chapter 23, relating to public carriers, provides, in substance, for the erection of gates over improved streets and alleys where they cross railroad tracks. Section 1752 makes it unlawful, within the limits of the city, for any one who shall have failed to erect gates when notified, to run an engine or train of cars propelled by steam power at a rate of speed exceeding six miles per hour, over, along or across any cross or intersecting improved street, avenue or road, which is now or may hereafter be used for wagon travel. But after having erected gates, "it shall be lawful for any . . . corporation to run its engines, car or train of cars at a rate of speed not exceeding twenty miles per hour." Section 1753 provides that any and all car, cars or locomotive propelled by steam power, when moving within the limits of the city, shall keep the bell of the engine "constantly sounded within said limits." As before stated, it was for a violation of these two provisions of the ordinance, that is, exceeding the twenty-mile-speed limit and failing, when moving, to constantly sound the bell, upon which this action is based.

That was plaintiff's evidence, save as to the age and earning capacity of Lagarce and that he was husband of plaintiff. There was also testimony as to the position of the tracks, etc.

At the close of this evidence defendant asked the court to give an instruction in the nature of a demurrer to the evidence, which being refused, it proceeded with the introduction of its evidence.

A witness, John W. Tracy, testified that he was on the sidewalk on Manchester avenue and going in a eastwardly direction along that avenue. He noticed Lagarce coming down the street right in front of him,

coming from the neighborhood of Tamm avenue, and drive on in front of witness about four blocks before he turned into the roadway leading to the Brick Company's plant. When Lagarce got to the place where he turned into this roadway, witness was to his left and noticed the eastbound train and at the same time saw the smoke of the westbound train across the top of the cars; that he hallooed at Lagarce, who turned to look at him just about the time the train struck his team; that at that time he (witness) was north of Lagarce and to his west. He testified that when he hallooed at Lagarce the latter's horses were approaching the westbound track; that at that time the eastbound train had passed; when witness noticed the westbound train and hallooed, Lagarce's horses were about on the track, that is on the westbound track; that after he noticed the westbound train and Lagarce continued to drive, there was no way to avoid the accident; when witness first noticed this westbound train it was not over a car and a half from the crossing. On cross-examination this witness testified that the only place Lagarce could have seen the approaching train before going on the track was at the junction of the roadway and Manchester avenue; that he could not have seen a train after he passed down behind the cars on the spur track; that at the time witness hallooed at Lagarce, the latter swung himself around; that the westbound train was then running from thirty to thirty-five miles an hour; that when the collision occurred, one of the horses was knocked on the eastbound crossing, the other carried on the cowcatcher of the engine, and the engine ran about five blocks before it came to a stop. On redirect examination this witness testified that when he had first noticed the eastbound train it was coming over Knox avenue, the last coach was coming over Knox avenue; that it ran on by the crossing and Lagarce continued to drive on down to the westbound track.

A. S. Butterworth, a civil engineer, testified to the correctness of the diagram in evidence, and also testified that he had personally gone to the scene of the accident and made some observations by looking from a point on Manchester avenue near the crossing; that a person just turning into the private crossing from Manchester avenue and looking east over the tops of the cars could see for nine hundred feet; that he (witness) had walked at an ordinary gait from the street car tracks on Manchester avenue to the main westbound track of defendant and that it had taken him about fifteen seconds to do so.

The deposition of a witness, Walker, was read. He testified that he had been crossing watchman for defendant at Knox avenue; had been acting as such for about a year and a half prior to the accident; that trains run over Knox avenue generally at a medium rate of speed and that the train which struck Lagarce was running from twenty to thirty miles an hour; trains were coming each way; that the one going east passed first and that Lagarce crossed right in front of the westbound train. Quoting his testimony, he said: "He (Lagarce) couldn't see it and the engineer couldn't see it. The engineer is no blame; he couldn't see him. Just the same as you are walking out of that door and walk right in the hole." He further testified that the westbound train whistled for Sulphur avenue, which was about three hundred yards east of the crossing where Lagarce was killed. The whistle was not sounded after that but the bell was ringing; that after striking Lagarce the train ran on for about a quarter of a mile.

The engineer of the train which struck Lagarce, the Kirkwood Accommodation, testified that he whistled both at Sulphur avenue and Knox avenue, gave four whistles, two long and two short; whistled at Sulphur avenue at the usual place east of the crossing; that the fireman rang the bell for the crossing; that

he met the eastbound train about at Sulphur avenue; that the eastbound train was whistling for Sulphur avenue about the same time his train was doing so. When he got within fifty feet of this dirt crossing of the Fire Brick Company he saw the heads of two grey horses come between the cars; sounded the whistle with one hand and applied the air brakes with the other; that the horses were coming from the north on to the track and appeared between the cars; that he probably had struck the horses before he ceased whistling.

The fireman of this train testified that when he first saw the team the horses were half way on the track; that he rang the bell until the train passed Sulphur avenue and was in the act of getting down to put in a fire when the engineer started to blow the whistle and pull the brakes; that the engineer grabbed the whistle and jerked it and applied the emergency brakes. On cross-examination this witness stated that the train ran on for about four hundred feet before it was stopped.

The conductor of the train testified that he heard the engineer whistle for Sulphur and Knox avenues and immediately after the whistle was sounded for Knox avenue heard two or three short blasts which was the danger signal; that he jumped up and looked out and the train had passed over the Brick Company's crossing. On cross-examination he testified that the train was not going over thirty miles an hour; that its speed was reduced as it approached Knox avenue.

The brakeman of the train testified that he was sitting in the combination car at the time the accident occurred; heard the engine whistle for Knox avenue and Sulphur avenue, then heard one long blast of the whistle; felt the application of the brakes and then hastened to flag another train which was following his train and paid no attention to Lagarce; that the Kirkwood Accommodation trains run very close, sometimes

twenty minutes apart; that this train was equipped with automatic air brakes operated by the engineer.

Evidence as to measurements, the plat, etc., which we have before summarized, was also introduced.

This is all the testimony in the case. At its conclusion, defendant again interposed a demurrer which the court overruled. The court gave a number of instructions at the instance of plaintiff and also at the instance of defendant. The jury returned a verdict in favor of plaintiff for $5000. Defendant, filing a motion for new trial and excepting to the action of the court in overruling it, and judgment following the verdict, has duly perfected its appeal to this court.

REYNOLDS, P. J. (after stating the facts).—We have set out the evidence with some prolixity, but as briefly as possible to give appellant all the benefit of it which counsel claims.

The points relied upon for a reversal of this judgment are three.

Taking them in their order, the first point made is, that a clear case of contributory negligence on the part of plaintiff's husband was established by the evidence and the court should have so declared. A multitude of authorities supposed to support this proposition are cited by the learned counsel for appellant, which will appear in the report of the case. Each and all of them announce propositions and apply principles that have been threshed out over and over and it will serve no useful purpose to attempt to review them. The principles well settled, the point lies in the application of them to the facts. No two cases are exactly alike on the facts. They are useful and of authority only in the application of the principles to those facts. One rule running through all of them is that it is only when the testimony is very clear and practically uncontradicted, that the court, in a given case, will declare, as a matter of law, that the contributory negli-

gence of the plaintiff bars recovery. In the case at bar it would have been error for the trial court to so declare and it is impossible for us, with that testimony before us, even as presented by the learned and very fair counsel for appellant, to hold, as a matter of law, that contributory negligence on the part of plaintiff's husband was established by the evidence. Under this evidence, following it as summarized by the learned counsel for appellant himself, it was for the jury, properly instructed as it was, to pass upon the issue of contributory negligence as a fact. That issue has been found contrary to the contention of counsel for appellant and we cannot disturb the verdict on that ground, supported as that verdict is by substantial and competent evidence.

The second point is that the court erred in refusing to give defendant's instruction numbered 9. That instruction is as follows: "The jury are further instructed that, if you find from the evidence that the death of plaintiff's husband was the result of unavoidable accident due to the inadvertent act of John Lagarce in driving his team on the defendant's track immediately in front of a moving train, then your verdict must be for defendant railway company."

Among other authorities cited by learned counsel for appellant in support of this instruction is Zeis v. St. Louis Brewing Association (not "Zeis v. Railroad," as twice erroneously printed by counsel), 205 Mo. 638, 104 S. W. 99. That authority, as we understand it, is against counsel's position. The instruction there before the court and passed on by it is as follows (l. c. 645): "2. If you find and believe from the evidence in the cause, that plaintiff's injury was the result of accident in the sense of misadventure, then your verdict must also be for the defendant." The court held in the Zeis case, supra, that this instruction under the facts and issues in that case was erroneous. While the court referred approvingly to the instruction given

in Henry v. Grand Avenue Ry. Co., 113 Mo. 525, 21 S. W. 214, it distinguishes the Henry case from the Zeis case on the facts. The instruction in the Henry case, supra, l. c. 534, was as follows: "If the jury believe from the evidence that the injuries sustained by the plaintiff were merely the result of accident, then your verdict will be for defendant." The saving word in this latter instruction is held to have been "merely." The Henry case further turned on the defense, which was that plaintiff there had accidently tripped on a crowbar, and that defendant was in no way responsible for that. In commenting on the instruction given in the Zeis case, it is said (l. c. 650): "After the respondent (plaintiff there) had made out his prima-facie case, by showing the defective condition of the box and his injury thereby, then the burthen was on the appellant to prove to the jury that it had performed all the duties it owed the respondent, by properly selecting, inspecting and repairing the boxes. This it attempted to do by the evidence, but nowhere was the jury required to find it had performed that duty before they could find for the appellant. It ignored all the evidence introduced by appellant, and told the jury that if the injury was the result of an accident, then they would find for it."

The ninth instruction, as asked and given here, left out all the elements of defense, that is to say, failure to comply with the requirements of the ordinance as to speed and ringing the bell. This instruction is furthermore erroneous in that it told the jury that if they found from the evidence that the death of plaintiff's husband "was the result of unavoidable accident *due to the inadvertent act of John Lagarce in driving his team on the defendant's track immediately in front of a moving train,* then your verdict must be for the defendant railway company." This puts all of the negligence on Lagarce and leaves out of consideration any possible negligence on the part of defendant. It was

erroneous in referring to the act of Lagarce as an act of inadvertence. It was not inadvertence at all. He drove onto the track of purpose and in assumed safety. In a sense, the killing, the happening, was an accident, for it was not done of purpose, but in law it was not, if the facts are as here found. Where, as here, the evidence tended to show that Lagarce was travelling very slowly, about two or three miles an hour, as he approached the danger point—and all crossings of streets over railroad tracks are danger points—had stopped inside of thirty-nine feet from the crossing, had looked and listened—could see a clear track for from seven to nine hundred feet to the east, neither saw nor heard the on-coming peril—and in that failure he was not alone, for others standing in the locality neither saw nor heard it—and was caught and killed by a train running at an unlawful speed, without observance of the requirements of the ordinance, there was no accident about it. The result was to have been anticipated—provided he was on the track. Lagarce, with no peril in sight for at least seven hundred feet, had a right to assume that no train, travelling over that distance at not exceeding the lawful speed of twenty miles an hour could possibly have touched him before he could have crossed in safety. So there is no accident, meaning that which could neither be anticipated nor avoided. The instruction was properly refused.

The third point is that the court erred in refusing to give defendant's instruction numbered 3, as asked and in modifying that instruction. We set out that instruction as given, putting in italics the words inserted and running a line through those stricken out by the court:

"The jury are further instructed that, if you find from the evidence that plaintiff's husband, John Lagarce, was prevented from seeing the approach of a train coming from the east on account of the presence

of cars which were standing on the northern tracks, or from any other cause, then it was the duty of said John Lagarce ~~to stop his team~~ *look* before going on the tracks and to listen for an approaching train; and, if you find that he could, under such circumstances, have discovered the train by ~~stopping and~~ looking or listening for it, and that he drove upon the track without ~~stopping~~ *looking* or listening, then in that event plaintiff is not entitled to recover.''

The evidence in the case practically without dispute, showed that the deceased, when he turned his team into the road and was within less than forty feet of the crossing, did stop and look for an approaching train from either the east or west, turning his head. It is to be assumed from this act, that he listened, for there is evidence that his hearing was normal. At forty feet he could have seen an approaching train from the east, if it had been within seven hundred feet, appellant's civil engineer says nine. There was no train then in sight, according to testimony in the case, coming from the east or as near as seven hundred feet. He then had to drive only forty-three feet for his wagon to clear the track. That his team moved at the rate of from two to three miles an hour, is undisputed. Mathematically considered, and accepting the figures of counsel for respondent, if he was going only two miles an hour, the train, at the rate that he had a right to presume it would not exceed, namely, the ordinance speed of twenty miles an hour, would have been at least three hundred and twenty-three feet east of the crossing when he was safely across. When he stopped his team at a place inside of forty feet from this crossing and looked and listened for an approaching train and neither saw nor heard one at that time, and he had a view for about seven hundred feet up the track to the east, he had a right to presume that he could cross in safety. He had a right to act, to move on. Under the facts in

evidence in this case, we cannot hold the law to be that he was bound to stop again before attempting to cross. This instruction as asked tended to direct the jury that the stop which Lagarce beyond question did make, was not sufficient, and that would have been error. The general rule only requires that one look and listen when approaching a danger point. There are exceptional cases in which, in addition to looking and listening, one is required to stop. But that has been held to apply when one is so situated that he could neither see nor hear. No such case is presented by the testimony in this case, even with the cars on the spur tracks obstructing the view for a time. Considering all the evidence in the case, the decedent used all the care which the law and human prudence demanded before attempting to cross the tracks. It must be remembered that this tragedy was one of seconds—was measured by the rapidly running second hand, not by the slower recorder of minutes. Defendant's skilled witness, a civil engineer, Mr. Butterworth, testified that walking at an ordinary gait it had taken him fifteen seconds to walk from the immediate vicinity of the street car tracks on Manchester avenue to the main track of the defendant's road. Lagarce was driving from two to three miles an hour, the latter nearly the ordinary gait of a man walking. Mr. Butterworth further said that looking over the tops of cars, a person turning from Manchester avenue into the dirt road could see east up the track nine hundred feet. Lagarce was about there when he stopped and looked and listened and saw nor heard any train. There was nothing to warn him that he then was within the danger zone. Others standing on Manchester avenue, further east than Lagarce, neither saw nor heard the approaching train. We think the court committed no error in altering the instruction in the manner which it did and that the instruction as altered submitted the case to

the jury in as favorable a light and as favorable a view of the law as the appellant was entitled to ask.

We see no reversible error to the manifest prejudice of the defendant in the case and are of the opinion that the judgment of the circuit court should be and it accordingly is affirmed.

*Nortoni* and *Allen, JJ.*, concur.