NELLIE A. UNDERWOOD, Respondent, v. SAINT LOUIS, IRON MOUNTAIN AND SOUTHERN RAILWAY CO., Appellant.

Springfield Court of Appeals, June 17, 1915.

1. COURTS: Power and Duty to Correct Errors. The Court of Appeals has the power and a duty rests upon it, to correct its own errors either in another case involving the same question or on a subsequent appeal of the same case.

2. RAILROADS: Crossing Collisions: Signals: Jury Question. Action for death in crossing collision. There is considered to have been introduced sufficient negative evidence to the effect that statutory signals were not given to take such question to the jury, though there was positive evidence that the signals were given.

3. ————: Crossing Signals: Statutory Requirements: When Not Met. The statute which requires railroad locomotives to

sound whistles at intervals until a road crossing is passed, is not complied with by the operators of such locomotive sounding a few weak whistles at a whistling post 1487 feet from the crossing, no other signals being given.

4. ————: Negligence: Contributory Negligence: Jury Question. Action for death at a railroad crossing caused by a collision of deceased's buggy and defendant's locomotive, defended on the ground that deceased was guilty of contributory negligence in driving on the track without stopping. Such question was for the jury and the burden of establishing such contention was on the defendant. Evidence considered not to show as a matter of law that deceased was guilty of such negligence.

5. ————: Crossings: Duty of Traveller Approaching. While a duty rests on a traveler approaching a railroad crossing to look and listen and sometimes it is his duty to stop in order the better to see and hear, yet it is not always incumbent on him to stop for that purpose. Whether or not he should do so depends on the circumstances and if it is doubtful the jury are to judge.

6. ————: Crossing Collisions: Contributory Negligence: Elements in Determining. In determining whether deceased was guilty · of contributory negligence in driving upon a railroad crossing, failure of defendant railroad to give certain signals required by statute is properly taken into consideration.

7. ————: Negligence: Crossing Collisions: Contributory Negligence. Where one, on a public highway approaching a railroad crossing, can neither see nor hear any indication of an approaching train, he is not chargeable with negligence for assuming that there is no train sufficiently near to make the crossing dangerous.

8. RAILROADS: Crossing Collisions: Negligence: Contributory Negligence. Action for death occasioned by collision between deceased's vehicle and defendant's locomotive at a railroad crossing. Evidence reviewed and considered not to show as a matter of law that deceased could have averted the accident when he saw, or by due care could have seen, the approaching train, or after he heard the danger signals given by the engineer.

9. NEGLIGENCE: Contributory Negligence: Sudden and Unexpected Danger. The law does not require unreasonable things and where one is suddenly and unexpectedly confronted by a dangerous situation, contributory negligence will not be attributed to him merely because he does not act under such circumstances instantly and in the most intelligent manner.

10. **INSTRUCTIONS: Covering Entire Case.** An instruction covering the entire case must not ignore any defense supported by evidence.

11. ————: **Negligence: Submission of Plaintiff's Case.** A plaintiff does not have to submit his case on all the grounds of negligence alleged, even though there is evidence to support all.

Appeal from Jasper County Circuit Court, Division Number One.—*Hon. J. D. Perkins*, Judge.

AFFIRMED.

*J. F. Green, A. E. Spencer* and *Barbour & McDavid* for appellant.

*J. V. McPherson, James A. Potter* and *Howard Gray* for respondent.

STURGIS, J.—Suit by the widow for the death of her husband caused by a collision with defendant's train at a railroad crossing. This is the second appeal in the case, our opinion on the first appeal being found in 182 Mo. App. 252, 168 S. W. 803. The case was retried on the same pleadings so far as the merits are concerned, the negligence counted on being defendant's failure to give the statutory signals of ringing the bell or sounding the whistle on the train approaching the wagon road crossing where plaintiff's husband met his death while attempting to cross defendant's track in a buggy. The defense, as on the other trial, is the contributory negligence of the deceased in going on the track without taking the proper precautions of stopping, looking and listening for the coming train.

On the former appeal the case was reversed and remanded solely on the ground that the court erred in submitting the case on the humanitarian rule, the majority opinion holding that there was no substantial evidence then in the record on which to base a finding that defendant's engineer did see, or by the

use of due care could have seen, deceased in a position of peril in time to have avoided the collision by the reasonable use of the means at his command and that plaintiff failed to make a case of negligence on this ground. On this trial the court again heard the evidence on this point and at the close thereof instructed the jury that there was no evidence of negligence in this respect, so that such ground of negligence is now out of the case. The jury found for plaintiff on the issue submitted of defendant's negligence in its failure to give the required signals on approaching the crossing and on the issue of deceased's contributory negligence in not using reasonable care in approaching the track at the crossing.

The defendant, at this trial, interposed, or attempted to do so, two constitutional questions, the determination of which it is claimed vests jurisdiction of this appeal in the Supreme Court. One of these questions relates to the constitutionality of section 5425, R. S. 1909, as interpretated by our Supreme Court in Boyd v. Railroad, 249 Mo. 110, 155 S. W. 13, to the effect that said section is partly penal and partly compensatory. The argument is that as said section was held constitutional in Young v. Railroad, 227 Mo. 307, 127 S. W. 19, on the theory that any recovery is wholly penal, the holding in the Boyd case that it is not wholly penal shakes, if it does not destroy, the constitutional foundation of said section. The other constitutional question sought to be interposed arises from the fact that the jury brought in a verdict for $7583, and the plaintiff, conceding that the verdict was excessive to the extent of $83, voluntarily remitted that amount and the court entered judgment for $7500. The defendant objected to this reduction of the verdict and judgment against it as "being palpably made for the purpose of affecting the jurisdiction of the appeal," and as "being a fraud on the jurisdiction of the Supreme Court," whose jurisdiction is fixed by the verdict as rendered,

and to deprive the Supreme Court of jurisdiction of the appeal in this manner is to deny defendant the equal protection of the law and is in contravention of its rights under the constitution.

A motion to transfer the case to the Supreme Court on account of the constitutional questions mentioned was filed in and overruled by this court. A writ of prohibition was then asked for by defendant in the Supreme Court on the ground that this court is wrongfully retaining jurisdiction of the case in which grave constitutional questions are properly involved. The granting of such writ of prohibition was denied by the Supreme Court without a written opinion and we must take it either that there is no merit in the questions raised and that such have ceased to be debatable constitutional questions, or that such questions were not timely raised as the same were not mentioned on the first appeal. We, therefore, retain jurisdiction of this appeal and pass to the consideration of the case unhampered by any constitutional luggage.

The defendant contends that the evidence on this appeal is different than on the former appeal, and, in any event, that this court is not irrevocably bound by any erroneous rulings made on the former appeal as to defendant being negligent or deceased's lack of negligence. We do not question either the power or duty of this court to correct its own errors either in another case involving the same question or on a subsequent appeal of the same case. [Bowles v. Troll, 262 Mo. 377, 171 S. W. 326; Mangold v. Bacon, 237 Mo. 496, 536, 141 S. W. 650; Greene County v. Lydy, 263 Mo. 77, 172 S. W. 376.]

We have, therefore, carefully read and compared the statement of facts as given in our former opinion with the present record and find that the facts there stated are in every material way correct—certainly so, with reference to the questions now involved and on which we all then agreed. We, therefore, refer to that

opinion for a more detailed statement of the facts presented on this record.

A demurrer to the evidence having been overruled, the defendant contends now, as it did then, that there is no substantial evidence that the defendant failed to give the signals of ringing the bell or sounding the whistle in the manner required by statute on approaching this crossing, and in fact claims that it did both. Defendant claims that its evidence is positive as to the signals being given and that plaintiff's evidence is so indefinite and negative in character that it does not raise a conflicting issue. We recognize the full force of this rule as stated in many cases. Osborn v. Railroad, 179 Mo. App. 245, 255, 166 S. W. 1118; Quinley v. Traction Co., 180 Mo. App. 287, 296, 165 S. W. 346; Bennett v. Metropolitan St. R. Co., 122 Mo. App. 703, 709, 99 S. W. 480; Henze v. Railway Co., 71 Mo. 636, 638; Williamson v. Railroad, 139 Mo. App. 481, 488, 122 S. W. 1113. Such, however, is not this case. We do not think such is true even with reference to whistling at or near the whistling post, shown to be 1487 feet from the crossing in question. There is strong negative testimony as to this by several witnesses who say they were giving attention and that is enough to take the case to the jury. For example, Mrs. Hemphill, defendant's witness, who lived west of the crossing three hundred feet, the direction from which the train was coming, says she heard the train before it reached the whistling post; that deceased had just passed her home; that her husband was across the track and might be coming home; that she knew of the danger and went from the kitchen to her front gate to give deceased warning; that she heard the noise of the train as it came along—"the faint noise of the train towards Aurora"—but did not hear any bell or whistle until the shrill danger signals, concededly not given until within two hundred or two hundred and fifty feet of the crossing. She explained that she was lis-

tening for the train as it was late and that the deceased could not hear it as easily as she could because he had entered the cut on the wagon road as it went down the hill towards the crossing and she was on higher ground and more in the open; that the train was not making much noise. Moreover, as we stated on the other hearing, two of defendant's witnesses, used for no other purpose than to prove the whistling, say that they were watching the train from a field where they were at work and that it gave two short weak blasts near the whistling post and no other sound by bell or whistle until near the crossing when the four or five quick danger signals were given. We say again that the giving of two, or even more, blasts of the whistle at or near the whistling post and running in silence from there on is not a compliance with the statute requiring the whistle to be sounded at intervals until the crossing is passed. The defendant, as if recognizing that its own witnesses had not shown a compliance with the statute as to whistling, produced some evidence that it kept the bell ringing continuously to the crossing. The defendant lays stress on the fact that other witnesses heard the coming train, as for instance the Hemphill girl and her aged grandmother living east of the crossing, and that the deceased also would have heard if he had listened as he ought to; but these witnesses say that they heard the noise of the running train but not of the bell or whistle. It is common knowledge that the bell or whistle sounds loud above the noise of the running train and the fact that these witnesses heard and observed the lesser noise and not the louder one is persuasive evidence that the louder signals were not given. Nearly all the evidence negatives the ringing of the bell at all and that any whistle was sounded, except possibly right at the whistling post nearly two hundred feet further away than the regulation distance, and shows that for nearly, if not quite, one-quarter of a mile this train ran in silence

under the edge of the hill out of the sight and hearing of the deceased traveler who was proceeding to the crossing unaware of its approach. So the jury have found and we approve such finding. That the deceased would have heard these signals had they been given is probable and it devolved on defendant to show that the damage was not caused by its failure in this respect. [Weltch v. St. L., Iron Mt. & So. Ry. Co., 190 Mo. App. 213, 176 S. W. 261; Weigman v. Railroad, 223 Mo. 699, 721, 123 S. W. 38.]

Nor do we think that the deceased was conclusively shown to be guilty of contributory negligence. We again hold that this was a question for the jury, the burden being on defendant. The facts now before us point out even more clearly than before the difficulty of deceased in hearing the train in the absence of ringing the bell or sounding the whistle at intervals. He had entered the cut of the wagon road going down the hill towards the crossing with the hill back towards the coming train and it and the dense growth of trees, brush and weeds between him and the track. Numerous witnesses testified as to the great difficulty of hearing a train as it came down grade around and under the hill by one at or near the crossing and especially if back a short distance in the wagon road cut. With the wind in the adverse direction to a traveler on the road, we can readily believe that a person at the Hemphill home in the valley east of this crossing with no hill between could more readily hear the train than the deceased. That he did not hear it is shown by his action in driving on the track in front of the train.

The defendant asked and the court refused to instruct the jury as a matter of law that it was deceased's duty to stop before going on the track and that a failure of deceased to stop in order to listen was negligence barring a recovery, provided the jury also found that such stopping would have avoided the injury. The latter part of this instruction is embodied in the one

given. This we think was not error. The evidence
was conflicting as to the rockiness of the road, espe-
cially the last forty or fifty feet before reaching the
crossing. If it was a fact and apparent to deceased
that the noise of his steel tired buggy was such as to
reasonably prevent his hearing a coming train, then it
was negligence in him not to stop and listen. The de-
ceased was required to use reasonable care and pru-
dence in this regard but no more. Stopping would do
no good unless it would enable him to hear a train
which could not be heard while going at a slow gait,
as the evidence tends to show he was. To what extent,
if any, the noise of the buggy and rockiness of the
road impaired his hearing was for the jury. It is only
in exceptional cases that the law can stamp as absolute
negligence a failure to stop in order to listen. No one
was close enough or gave such close attention to the
deceased's actions as to show positively that he failed
to stop, much less to show that he did not at some
point near the crossing go at such a low rate of speed
as to render his ability to hear practically the same
as at a full stop. Such, we think, is the law as an-
nounced in many cases. [Weigman v. Railroad, 223
Mo. 699, 123 S. W. 38; Lagarce v. Railroad, 183 Mo.
App. 70, 90, 166 S. W. 1063; Campbell v. Railroad, 175
Mo. 161, 173, 183, 75 S. W. 86; Masterson v. Railroad,
58 Mo. App. 573, 575; Petty v. Railroad, 88 Mo. 306;
Henze v. Railroad, 71 Mo. l. c. 640; Powers v. Rail-
road, 202 Mo. 267, 280, 100 S. W. 655.] The train was
about an hour late and the deceased doubtless thought
it had already passed. What is said as to a traveler's
duty in approaching a railroad track in the Campbell
case, supra, is applicable here: "Whilst it is the duty
of one under such circumstances to look and listen, and
sometimes it is his duty to stop in order the better to
see and hear, yet it is not always incumbent on him
to stop for that purpose; whether he should do so or
not in a given case depends on the circumstances, and if

it is doubtful the jury are to judge of it. In this instance the boy did not stop, and whether he looked or listened we can only judge by inference. It may be that he both looked and listened, but that he was deceived by the fact, if it was the fact, that there was no headlight (signals), and that his listening was rendered ineffectual by the noise of his own wagon rattling over the vitrified pavement. It has often been said that a man approaching a railroad with the purpose of crossing it is chargeable with the duty to himself of looking and listening for a train. There is nothing technical about that rule; it is the dictate of common sense, and one's conduct in relation to it must be judged with common sense. What the law requires is the exercise of that degree of care which such persons of ordinary prudence under like circumstances usually exercise.''

Nor do we assent to the proposition that defendant's duty to give warning signals is a negligible fact in determining deceased's contributory negligence. The deceased had a right, in the absence of any knowledge to the contrary, to take into consideration that defendant would obey its duty to sound the whistle or ring the bell on approaching this crossing. His care for his own safety is not to be determined by the same standard as if defendant owed no such duty to him or if deceased knew that no such signals would be given. One cannot heedlessly and blindly go upon a railroad track relying solely on defendant's duty to give him warning while neglecting his own duty to use his senses of sight and hearing; but the law does not require him to anticipate and act on the theory that the persons in charge of the train will neglect their duty as to giving signals and cast on the traveler the high degree of care made necessary only by such neglect. We again quote from the Campbell case, supra: ''In this case the boy had a right to expect that there would be a headlight (signals) on any car on that road, and

if he looked in both directions as he approached the tracks and saw no headlight (heard no signals), and if he then concluded for that reason that there was no car coming and drove on the track, the court had no right to say as a matter of law that he was guilty of contributory negligence. We do not mean to say that he was not guilty of contributory negligence or that the jury would not have been justified in finding him guilty, but we mean that men might reasonably differ about it, and, therefore, it was for the jury to say whether under all the circumstances he was or was not guilty." [Donohue v. Railroad, 91 Mo. 357, 363, 2 S. W. 424, 3 S. W. 848; Petty v. Railroad, 88 Mo. 306, 318; Powers v. Railroad, 202 Mo. 267, 280, 100 S. W. 655; Jackson v. Railroad, 171 Mo. App. 430, 451-2, 156 S. W. 1005.] In the Donohue case, supra, the court said: "Neither seeing nor hearing a train, nor the sound of a bell, for none was rung, the deceased had a right to presume that he could pursue his course without danger. What is said in the case of Kennayde v. Railroad, 45 Mo. 255, may be appropriately applied here. It is there said: 'The citizen who on a public highway approaches a railway track, and can neither see nor hear any indication of a moving train, is not chargeable with negligence for assuming that there is no car sufficiently near to make the crossing dangerous. [Ernzt v. Railroad, 35 N. Y. 9.] He has a right to assume that in handling their cars, the railroad company will act with appropriate care; that the usual signals of approach will be seasonably given, and that the managers of the train will be attentive and vigilant.' In Newson v. Railroad, 29 N. Y. 390, the rule is stated thus: 'The law will never hold it imprudent in any one to act upon the presumption, that another in his conduct will act in accordance with the rights and duties of both.'" This expression of the law has met the approval of

190MA27

the Supreme Court in the more recent case of Weigman v. Railroad, 223 Mo. 699, 719, 123 S. W. 38.

We cannot agree that the evidence unquestionably shows that the deceased was guilty of negligence in going on the track after he saw, or could with due care have seen, the approaching engine, or after he heard the danger signals given by the engineer on seeing deceased's horse emerge from behind the embankment. According to the engineer's story when he first saw, or could see, the horse as his engine rounded the hill and cut, the engine was one hundred to one hundred and fifty feet of the crossing and the horse's head was then within three or four feet of the rail. The driver could not yet see the engine as he was further back behind the embankment. Another step or two of the horse and he was on the track with the fast moving train bearing down upon him. The evidence also shows that the approach to the track was narrow with ditches on each side making it difficult, if not dangerous, to turn either way. Looking at it now and after carefully studying the surroundings, one can suggest actions on the part of deceased which might have saved his life. He might have stopped the horse instantly, even if on the track, and let the engine strike the horse instead of the buggy, or he might have thrown himself out of the buggy in time to have fallen outside of the rail. But when suddenly confronted with an unexpected and appalling danger persons do not usually, and the law does not require them to, act instantly and in the most intelligent way to avert or extricate themselves from the peril. [Kleiber v. People's Ry. Co., 107 Mo. 240, 247, 17 S. W. 946; Harshaw v. Railroad, 173 Mo. App. 459, 467, 159 S. W. 1; Donohue v. Railroad, 91 Mo. l. c. 365.] Allowances should be made for the frailties of human nature in favor of the traveler as well as of the engineer in charge of the train, as was pointed out in our former opinion. The

poet, in speaking of Gen. Sheridan on seeing his shat-
tered and retreating lines after his twenty mile ride
from Winchester, says: "What was done, what to do,
a glance told him both." But that is poetry. and, be-
sides, Gen. Sheridan was an extraordinary man and
we suspect that he was expecting to find much the con-
dition which met his eye and had been planning what
to do and how to do it.

The various phases of deceased's duty in approach-
ing the track as to stopping, looking and listening were
submitted to the jury by instructions drawn by de-
fendant and sufficiently favorable to it and in accord-
ance with the law as stated in this and the former
opinion.

We do not see the force of defendant's criticism
of plaintiff's instruction, submitting her whole case,
on the ground that it submits the case on only one
ground of negligence, that relating to the statutory sig-
nals, while the petition contains three grounds of neg-
ligence, one of which, however, was taken from the
jury at defendant's request. We know of no rule of
law requiring a plaintiff to submit his case on all the
grounds of negligence alleged even where there is evi-
dence to support all. There is a rule of law requiring
an instruction covering the whole case, not to ignore
any defense supported by the evidence, but it would
be novel to apply it to the grounds of recovery in in-
structions given for the plaintiff.

The court admitted evidence as to plaintiff's pe-
cuniary loss and instructed the jury that in case it
found for plaintiff to allow $2000 as a penalty and an
additional amount as compensatory damages not ex-
ceeding in the aggregate $10,000, taking into consid-
eration the usual compensatory features, such as de-
ceased's age, earning capacity, etc. This instruction
is not seriously criticised and is unobjectionable from

defendant's statement under any view of the ruling in Boyd v. Railroad, supra.

The case was well and carefully tried and the judgment will be affirmed.

*Robertson, P. J.*, concurs in the result. *Farrington, J.*, concurs.